352 So.2d 1196 (1977)
Wade S. WEEMS, M.D., E. Costatino, Jr., M.D., Weems-Costatino, P.A., and Hartford Accident and Indemnity Company, Appellants,
v.
Barbara DAWSON, Administratrix of the Estate of Jack Dawson, Deceased, Henry L. Kaye, Esquire, Administrator of the Estate of Von D. Mizell, M.D., Deceased, North Broward Hospital District, Etc., et al., Appellees.
No. 75-2298.
District Court of Appeal of Florida, Fourth District.
November 15, 1977.
*1197 Larry A. Klein, West Palm Beach, and Pyszka, Kessler, Adams & Solomon and Saunders, Curtis, Ginestra & Gore, Fort Lauderdale, for appellants.
Robert Orseck, of Podhurst, Orseck & Parks, Miami, and Susan Goldman, Miami, and Simons & Schlesinger, Hollywood, for appellees.
DOWNEY, Judge.
After a jury verdict in favor of the defendants/appellants in a medical malpractice case, the trial judge granted appellee a new trial. That order granting a new trial is the subject of this appeal.
Jack Dawson, appellee's decedent, while working on a construction site, fell one story and landed on a wheelbarrow, causing internal injuries. Dawson was admitted to North Broward Hospital on September 25, 1972, by Dr. Von D. Mizell who assumed the general responsibility and management of the patient throughout his hospital stay. During the course of treatment Dr. Mizell requested consultation with a general surgeon, Dr. Oscar S. Lenit, Jr., and with a firm of urologists, Weems and Costatino, P.A. On September 28, 1972, Drs. Weems and Costatino determined that surgery was indicated and on that day Dawson's right kidney was removed. The evidence is clear that Dawson continued to have some internal bleeding after the operation, as well as some external bleeding at the operative site. The negligent conduct charged against all of the defendants in this case was asserted to have taken place during the days immediately following the kidney removal. However, this appeal involves only defendants Weems & Costatino. The companion cases are Case Nos. 76-32, 76-33, 76-40 and 76-189, Fla.App., 352 So.2d 1200.
The appellee adduced evidence from several expert witnesses to prove that Drs. Weems and Costatino were negligent in not operating on Dawson a second time during the several days after the kidney removal and prior to his death on October 3, 1972, because all of the signs indicated that Dawson was experiencing severe internal bleeding. Appellee's witnesses maintained that, based upon those signs, Dawson's only chance to survive was a second operation in order to locate the source of the bleeding and stop it. These experts testified that appellants failed to meet the usual and customary standards of care under the same or similar circumstances and in the same or similar community.
It was appellants' position that, since Dawson had developed a serious blood coagulation disorder following the first operation, a second operation would have been very risky. It was their judgment that it was safer to treat Dawson with blood transfusions and hope the internal bleeding would eventually cease. Several experts testified on behalf of the appellants that their treatment was not negligent because the blood coagulation disorder precluded another operation.
The jury returned a verdict in favor of the appellants, but the trial court granted a new trial, stating in his order:
"[T]he verdict of the jury in the instant case shocks the judicial conscience of this Court so that the Court is of the opinion that said verdict was based upon passion, prejudice, sympathy or some other consideration outside of the evidence, or that the jury failed to understand, weigh or consider the force and credibility of the evidence or failed to follow or understand the charges of this Court, and the Court having carefully considered the principles set forth in the matters of Cloud v. Fallis [Fla.], 110 So.2d 669, Russo v. Clark [Fla.], 147 So.2d 1, Pittman v. Smith [Fla.App.], 252 So.2d 279 and Hubbard v. Brown [Fla.App.], 262 So.2d 267 and being of the opinion that this Court therefore is duty bound to set aside the verdict of this jury and to grant the plaintiff a new trial upon the ground that *1198 said verdict was contrary to the manifest weight of the evidence... ."
This appeal is from that order.
Appellants contend that the trial judge erred in granting appellee a new trial because there was substantial competent evidence in the record to support the jury verdict. There appears much to be said for the wisdom of the argument that, if jury verdicts mean anything, a trial judge should not be authorized to grant a new trial where there is substantial competent evidence to support the verdict. But, while it is not at all clear when a trial judge can be held in error for granting a new trial, the cases do seem uniform now in holding that the existence of substantial competent evidence supporting the jury verdict in the record does not preclude the trial judge from granting a new trial, Cloud v. Fallis, 110 So.2d 669 (Fla. 1959); Dubois Fence & Garden Co. v. Stevens, 296 So.2d 116 (Fla. 1st DCA 1974); and Danek v. Hoffman, 189 So.2d 893 (Fla. 2d DCA 1966).
Turning to the principles applicable to the trial court's consideration of a motion for new trial, we know from the leading case of Cloud v. Fallis, supra, that:
"When a motion for new trial is made it is directed to the sound, broad discretion of the trial judge, Poindexter v. Seaboard Air Line R. Co., Fla., 56 So.2d 905, Mead v. Bentley, Fla., 61 So.2d 428, who because of his contact with the trial and his observation of the behavior of those upon whose testimony the finding of fact must be based is better positioned than any other one person fully to comprehend the processes by which the ultimate decision of the triers of fact, the jurors, is reached, ..." 110 So.2d at 673.
Furthermore, judicial discretion has been defined as:
"`The power exercised by courts to determine questions to which no strict rule of law is applicable but which, from their nature, and the circumstances of the case, are controlled by the personal judgment of the court.'" Castleweed International Corporation v. LaFleur, 322 So.2d 520, 522 (Fla. 1976).
Thus, one attacking an order granting a new trial has the burden to make error clearly appear and it is a very heavy burden. Webster v. Harmon, 240 So.2d 69 (Fla. 4th DCA 1970).
The function of an appellate court in reviewing an order granting a new trial is commented upon in the dissenting opinion of Judge Smith in Ward v. Orange Memorial Hospital Association, Inc., 193 So.2d 492 (Fla. 4th DCA 1967):
"In the very early case of Schultz v. Pacific Insurance Co., 1872, 14 Fla. 73, the Supreme Court, after there noting that the verdict of the jury was founded on complicated and contradictory evidence which required an investigation into the character and credibility of the witnesses in order to compare and weigh the evidence and that this is the proper function of a jury, then continued by stating:
`While it is true that this is the proper function and province of the jury, it is at the same time true that in cases where there is conflict in the testimony, it is within the province and power of the court to set aside a verdict which does not reach a substantially just conclusion in cases where the conflicts are of such character and the circumstances of such nature as to give just grounds for the belief that the jury acted through prejudice, passion, mistake or any other cause which should not properly control them. This power exists in the court. In exercising it the court does not encroach upon the province of the jury, for the reason that it does not conclusively settle facts in the form of a verdict, but only gives another jury the opportunity of so doing, and of correcting what appears to be a mistake. If this is not properly within the power of the court, then the result is that the first twelve men that happen to constitute a jury in a given case are by law the final arbiters of the facts in that case. There is no such principle of law.'" Id. at 496.
*1199 That same opinion then goes on to suggest a test to be applied in reviewing such an order:
"... the test on review [of a motion for new trial] is not whether the appellate court agrees with the evidentiary conclusions of the trial court or whether the jury verdict finds support in the record but whether there is sufficient evidence to support the evidentiary finding made in the order granting a new trial." Id. at 497.
Another helpful test for applying these principles to appellate review of an order granting a new trial is contained in the concurring opinion of Justice Overton in the LaFleur case, supra, wherein, it is stated:
"What is the test that an appellate court must apply to review a discretionary act of a trial judge? In an extended comment about the discretionary power, a federal court said: `Discretion, in this sense, is abused when the judicial action is arbitrary, fanciful, or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court abused its discretion.' Delno v. Market Street Railway Company, 124 F.2d 965, 967 (9 Cir., 1942).
"It is my opinion that in reviewing a true discretionary act of a trial judge, the appellate court must fully recognize the superior vantage point of the trial judge and apply the `reasonableness' test to determine whether the trial judge abused his discretion. If reasonable men could differ as to the propriety of the action taken by the trial court, then it cannot be said that the trial court's action was unreasonable and that it had abused its discretion." 322 So.2d at 524.
As we pointed out earlier, there is substantial competent evidence on both sides of the issue of appellants' negligence which was presented to the jury. However, the trial judge, as the cases keep reminding us, was on the scene familiar with the temperature and pulse of the trial. In reflecting upon the trial he found that the verdict in favor of appellants was contrary to the manifest weight of the evidence. Furthermore, the transcript of the argument on Motion for New Trial demonstrates that the trial judge was quite convinced that the verdict did not comport with the justice of the case. So we find ourselves in a situation quite analogous to that of the Supreme Court of Florida in Pyms v. Meranda, 98 So.2d 341 (Fla. 1957), where it said:
"In the instant case the Judge who presided at the trial heard all of the evidence, viewed all of the witnesses and was in a prime position to give consideration to the credibility of those who testified and the relative weight to be accorded their testimony. After all of this direct contact with the actual trial of the cause, the trial judge reviewing the matter in retrospect on the motion for new trial was of the opinion that the jury acted through sympathy or mistake, that its verdict was contrary to the manifest weight and probative force of the evidence and the justice of the cause and that the verdict was contrary to applicable law." Id. at 343.
Applying the LaFleur test to this case, we cannot say the trial court's order granting appellee a new trial is arbitrary, fanciful, or unreasonable, or that no reasonable man would take the view adopted by the trial court. Accordingly, under the established rules, appellants have failed to demonstrate that the trial judge abused his broad discretion in granting appellee a new trial.
AFFIRMED.
ALDERMAN, C.J., and PARHAM, HARRY C., Associate Judge, concur.