400 So.2d 550 (1981)
EQUITABLE LIFE ASSURANCE SOCIETY OF the UNITED STATES, Appellant,
v.
Jeanne F. FAIRBANKS, Appellee.
No. 79-2079.
District Court of Appeal of Florida, Fourth District.
July 1, 1981.
Cynthia S. Prettyman of Montgomery, Lytal, Reiter, Denney & Searcy, P.A., West Palm Beach, for appellant.
Gerald M. Wochna of LaValle, Wochna, Rutherford, Maher & Truesdell, P.A., Boca Raton, for appellee.
MOORE, Judge.
The appellant, defendant at trial, appeals an order granting a new trial. We affirm.
*551 Subsequent to a jury trial and after hearing argument on the plaintiff's motion for new trial, the trial court entered the following order:
1. The trial of this cause involved a slip and fall by Plaintiff at Defendant's shopping center allegedly caused by Defendant's failure to properly clean up an oil spot in the walkway of Defendant's property. A jury found Plaintiff to be 90% negligent and Defendant 10% negligent and awarded total damages of $5,000.00, which was thereafter reduced according to the above percentages. Plaintiff's Motion demanded a new trial on both the issues of damages and liability.
2. Special damages in this case include $818.25 for past medical treatments, $420.00 for past nursing care, and $1,750.00 as an estimate of the present costs of future surgery which would provide temporary symptomatic relief for Plaintiff's existing knee condition. Additionally, Plaintiff incurred the amount of $405.00 to have her automobile shipped to Florida during the term of her recuperation.
3. The evidence was uncontroverted that although Plaintiff was between employment at the time of the injury, February 5, 1978, as of the end of December, 1977, she had been earning over $1,000.00 per month for the preceding nine month period. Also, she had secured employment as a real estate salesman in Chicago, Illinois, where she was to begin work again the week of her injury.
4. Plaintiff's injuries, involving mainly a broken kneecap, caused her to miss approximately five months of work following her injuries during which time she spent seven weeks in a hard cast, and several more weeks in a removable cast, all according to the uncontradicted testimony of Dr. Jacob Raney, orthopaedic surgeon of Boca Raton, Florida, who was the only physician to testify in the case. Other witnesses who testified in the case, including the Plaintiff, also stated without contradiction that Plaintiff's broken kneecap was painful following the injury and continued to give her pain through the date of the trial, over thirteen months later.
5. Again, according to Dr. Raney's undisputed testimony, Plaintiff's injuries resulted in a permanent impairment of 10% of the lower extremity. The mortality table introduced in evidence indicated that Plaintiff's life expectancy exceeded 28 years.
6. Significantly, all of the above matters were testified to by Plaintiff and supporting witnesses. There were no witnesses produced by Defendant, either experts or otherwise, who contradicted the testimony referred to above.
7. The evidence of Plaintiff's continuing disability was also unrefuted by Defendant. Testimony of Plaintiff and her supporting witnesses indicated that she presently was working less than full time as a realtor because of her injury. The amount of time she was missing from work was anywhere from four to ten days per month. Again, the past demonstrated value of her work time as a realtor and otherwise, exceeded $1,000.00 per month.
8. In view of the jury instructions properly given in the case, it is clear that the jury failed to consider both items of tangible and intangible damages sustained by the Plaintiff in this cause.
9. There being no conflict of testimony as to the injuries sustained by Plaintiff, and in fact, there being no witnesses from the defense whatsoever to contradict any of the evidence presented by the Plaintiff in this cause on the issue of damages, it is clear that a jury of reasonable men could not have returned the verdict which was returned in this cause. Griffis v. Hill, 236 230 So.2d 143 (1969); Perenic, infra; Straker v. Lynch, 335 So.2d 356 (1 DCA 1976).
10. This Court has viewed the evidence most favorably to the Defendant and eliminated from consideration any matters upon which there was any material dispute and those matters which depended solely upon the subjective complaints of the Plaintiff. Anastasio v. Summersett, 217 So.2d 854 (4 DCA 1969).
*552 11. Since the verdict is contrary to the "manifest weight of the evidence", which by definition means evidence which is clear, obvious and indisputable, a new trial must be ordered. Perenic v. Castelli, 353 So.2d 1190 (4 DCA 1977).
12. Had there been any basis in the evidence upon which the jury could have reasonably concluded that the Plaintiff was not, in fact, injured, that Plaintiff's injuries were from another accident or a pre-existing cause, or that Plaintiff's proof of her alleged injuries was not believable either because it was grounded upon her subjective complaints or because it was based upon medical testimony which was disputed, then in any of those events, this Court would not say that the jurors, as reasonable men, could not have found the verdict they did. Anastasio, supra, involved a strikingly similar factual situation to the instant case and employed almost identically the above language in its decision. See also Borandi v. St. Anthony's Hospital, Inc., 291 So.2d 54 (2d DCA 1974).
13. Here, the evidence was without dispute that the Plaintiff was in fact injured as a result of the accident out of which the suit arose, and the nature and extent of the injury and its effect, was as delineated above.
14. Therefore, it can only be concluded that a verdict in such amount for damages sustained by the instant Plaintiff was induced by some misconception of the law or the evidence or that the jury did not consider all the elements of damage involved and was influenced by bias and prejudice. It is believed that the bias and prejudice of the jury is clear not only from the treatment of damages in the cause but also from their findings regarding liability.
15. The fact that oil existed at the Plaintiff's point of fall, that Defendant knew about the existence of the oil and had in fact attempted to clean same some three days before, and also the fact that Plaintiff fell as a result of the oil being on the premises is all undisputed. The only issue appears to be the respective negligence of each party, i.e., whether or not Plaintiff by the exercise of reasonable care should have discovered the oil and avoided same.
16. Although there were no eyewitnesses except Plaintiff, the jury obviously found that Plaintiff was comparatively negligent in failing to discover the oily substance on the night in question. This finding was made in spite of Plaintiff's direct testimony that she was watching where she was going and that the color of the oil which blended in with the brick area of the walk and the lighting available, did not permit her to discover the oil and prevent her fall.
17. Defendant produced an expert to testify to adequacy of the lighting which existed the night of the fall. Also Defendant, in opposition to Plaintiff's testimony, produced a series of witnesses who were present and past employees who stated that they had inspected the walkway both before and after Plaintiff's fall but did not notice any hazardous oil spill, even in the daylight and even though it was among their duties to discover foreign substances, including oil, on the walkway.
18. The conflict in testimony, as to the visibility or discernibility of the oil, was further underscored by the testimony of two other Plaintiff's witnesses, Mrs. Pellerin and Plaintiff's investigator, Mr. Stevens. Mrs. Pellerin saw the oil on the walk the day after the fall and Mr. Stevens photographed it less than a week later. The photographs were admitted into evidence.
19. Had Defendant not been found to be negligent at all, then a verdict concluding that Plaintiff fell somewhere else or as a result of something other than oil would have been at least understandable.
20. However, in finding that Defendant was negligent, the jury obviously found that Defendant had notice of the spot, had attempted to clean same (as testified to by Defendant's witnesses), that Plaintiff fell at the spot in question, but that because of the lighting testimony produced by Defendant's expert, Plaintiff was 90% negligent for failing to discover and avoid the spot which existed.
*553 21. Although such conflicting testimony standing alone may not have been enough to overturn a verdict for the Defendant, such, when considered in conjunction with the issue of damages previously discussed, presents a situation where the issues of damages and liability are so inextricably interlaced, that justice to all parties concerned requires both issues to be retried. Lawson v. Swirn, 258 So.2d 458 (1 DCA 1972) and The 1661 Corp. v. Snyder, 267 So.2d 362 (1 DCA 1972).
22. Also, as stated in 58 AmJur 2d 213, New Trial Sec 27,
If the award of damages to the Plaintiff is "grossly inadequate", so as to indicate that the jury was actuated by bias and prejudice, or that the verdict was a compromise, the Court must set aside the verdict in its entirety and award a new trial on all issues.
citing Leipert v. Honold, 39 Cal.2d 462, 247 P.2d 324; 29 ALR 2d 1185; Artstein v. Pallo (Mo.) 388 S.W.2d 877, and others.
23. The conclusion that the jury speculated as to Plaintiff's conduct and was influenced by bias and prejudice is therefore inescapable and a new trial must therefore be ordered on both issues of liability and damages herein.
We have examined the record in light of the foregoing order and the extant caselaw and we conclude that the appellant has failed to carry the heavy burden of demonstrating an abuse of the trial court's discretion. Although the plaintiff's credibility was impeached with prior inconsistent statements regarding her prior employment and residence, we do not find such impeachment to affect the otherwise uncontroverted evidence of her injuries and the damages she suffered.
A trial judge's discretion in granting a new trial, although not unbridled, is broad in scope and will not be disturbed on appeal unless an abuse is patent from the record. Cloud v. Fallis, 110 So.2d 669 (Fla. 1959); Castlewood International Corp. v. LaFleur, 322 So.2d 520 (Fla. 1976). We must lend great credence to the trial court's superior vantage point. Pyms v. Meranda, 98 So.2d 341 (Fla. 1957). As this court said in Weems v. Dawson, 352 So.2d 1196 (Fla. 4th DCA 1977), the trial judge "was on the scene familiar with the temperature and pulse of the trial."
In keeping with these principles, and although we may not agree, we cannot say that the granting of a new trial in this case was arbitrary, fanciful, or unreasonable, or that reasonable minds could not differ on the issue. See, Castlewood International Corp., supra at 524 (Overton, J., concurring).
Accordingly, the order is AFFIRMED.
LETTS, C.J., and HERSEY, J., concur.