293 So.2d 747 (1974)
Maria HERNANDEZ, Individually and As Administratrix of the Estate of Pablo Hernandez, Appellant,
v.
CLINICA PASTEUR, INC., a Florida Corporation, et al., Appellees.
No. 73-31.
District Court of Appeal of Florida, Third District.
April 30, 1974.
Rehearing Denied May 21, 1974.
*748 Horton & Perse and Arnold Ginsberg, Strauss & McCormick, Miami, for appellant.
Podhurst, Orseck & Parks, Fuller, Brumer, Moss & Cohen, Miami, for appellees.
Before PEARSON, CARROLL and HENDRY, JJ.
PEARSON, Judge.
The appellant was the plaintiff in the trial court where she brought an action for malpractice against the appellees alleging that her husband died as a result of the appellees' negligence. The jury awarded her a verdict in the sum of $15,000. After the verdict was returned, the defendants-appellees moved for a final judgment in accordance with their prior motion for a directed verdict. The motion for directed verdict was granted and final judgment was entered for the defendants. This appeal is from that judgment.[1] We reverse upon a holding that proximate cause was an issue properly submitted to the jury and that the trial court erred when it granted the motion upon a holding that "... the Plaintiff failed to establish by appropriate testimony that any act of the Defendants proximately contributed to the death of PABLO HERNANDEZ as a matter of law".
Appellant's sixty-one year old husband died at Hialeah Hospital, a victim of acute myocardial infarction. The plaintiff-widow, and administratrix of decedent's estate, brought this action for damages alleging medical malpractice by the defendant clinic. The trial was before a jury, and the following facts and testimony were presented.
On the evening before he died, the decedent came home from work looking pale and not feeling well. Later, a neighbor drove him to the defendant clinic, where he was attended by Dr. Bueno, an unlicensed resident. Dr. Bueno called defendant, Dr. Alpizar, the supervising physician, and told him decedent was suffering from chest and stomach pains supposedly caused by gastric distress. Apparently, a medicine was prescribed for nervousness. Decedent's blood pressure was taken and found *749 to be a little above normal, and Dr. Bueno took decedent's pulse, but did not record it. Dr. Bueno did not administer an electrocardiogram. Decedent was advised to go home and do exercises, and that nothing was wrong.
The decedent did exercises when he arrived home and went to bed. During the night decedent, suffering from severe chest pains and pain radiating into his left arm and neck, was taken to Hialeah Hospital. A resident there took an eletrocardiogram and then called the cardiologist on duty, who ordered standard emergency drugs for myocardial infarction. The cardiologist, Dr. Gersing, was called again about a half hour later, and when he arrived, the decedent was dead.
At trial, Dr. Gersing was asked a hypothetical question regarding professional conduct. Dr. Gersing testified that "probably and possibly" decedent would have had a better chance to live if Dr. Gersing's recommended treatment had been administered initially. He further testified that the exercise the decedent was directed to take would increase the damage to a patient suffering from a myocardial infarction. During trial, defendants moved for a directed verdict at the close of plaintiff's case and at the close of all the evidence, claiming that plaintiff never proved that the deceased could have been saved, regardless of what was done. The trial court reserved ruling on the motion, and the jury returned a verdict for plaintiff. Defendants moved for judgment in accordance with prior motion for directed verdict. The motion was granted, and final judgment was entered for defendants.
The appellant relies for reversal upon the holding of the Supreme Court of Florida in Atkins v. Humes, Fla. 1959, 110 So.2d 663. The Atkins case involved an action brought for medical malpractice in which the District Court of Appeal, Second District, affirmed a summary judgment against a physician charged with negligence in the treatment of a minor for a fracture of the elbow. In quashing the opinion of the District Court of Appeal, the Supreme Court held:
"The fact that `[n]o expert testified that the sore and contracture resulted from improper treatment', as stated by the District Court of Appeal in its opinion, is not decisive; in fact, many courts hold that it is improper for an expert to testify that the alleged malpractice did occasion the result complained of, as distinguished from expert testimony that the alleged malpractice could occasion the result. See DeGroot v. Winter, 261 Mich. 660, 247 N.W. 69, in which the court said: `* * * when a result could have been occasioned by one of two or more causes, the ultimate fact of which cause occasioned the result is for determination by the jury, and a medical expert may not, in case of conflicting evidence, invade the province of the jury and testify that the result was in fact occasioned by one cause only.' Cf. North v. State, Fla. 1953, 65 So.2d 77."
We consider the cited decision controlling on this appeal.
The appellees suggest that such is not the case because the basis of the Atkins opinion is the premise that under certain limited circumstances expert opinion as to causal relationships between the medical malpractice and the injury is not required. We think this distinction is unpersuasive because the Supreme Court expressly held:
"Even in those cases in which some expert testimony may be required to show causation, the jurors may be authorized to infer from the circumstances that the defendant was negligent in the administration of an approved medical treatment, despite the absence of direct expert testimony to this effect and in the face of expert testimony to the contrary."
It is well established that proximate cause is ordinarily a matter for the jury. *750 Visingardi v. Tirone, Fla. 1966, 193 So.2d 601. See Trotter v. Hewett, Fla.App. 1964, 163 So.2d 510, where it was stated:
"Proximate cause is not a question of science or legal knowledge  it is a fact to be determined in consideration of all the circumstances. It is only when the facts are susceptible of only one inference that the question is one of law for the court. Otherwise it should be submitted to the jury. See Montgomery v. Stary, Fla. 1955, 84 So.2d 34, 40; and 23 Fla.Jur., Negligence, § 133, p. 358."
In the instant case, when the evidence is viewed in the light most favorable to the plaintiff, as it must be since the plaintiff was the party moved against upon the motion for directed verdict, there is expert testimony in this record upon which a jury of reasonable men could have found that the cause of death was occasioned by the failure of the defendants, considering the manifestation of clear symptoms, to properly diagnose decedent's heart condition, combined with the presumption of exercise rather than the proper medical treatment. It further appears that once the malpractice was established, the question of causation for the decedent's demise within hours of the malpractice was one which was properly submitted to the jury.
The appellees have relied upon two prior decisions of this court as justification for the trial court's holding that there was insufficient evidence to submit the issue of proximate cause to the jury. The decisions relied upon are Lane v. White, Fla. App. 1964, 167 So.2d 14, and LePrince v. McLeod, Fla.App. 1965, 171 So.2d 189. In Lane, the first cited opinion, the plaintiff alleged malpractice in that he was not bound so that he could not thrash about when coming out from under the effects of an anesthetic administered during an operation. The patient suffered a hernia which allegedly could have resulted from the thrashing about. In the opinion, this court pointed out that the sum of the expert testimony established that the hernia could have resulted from any one of three causes, only one of which could have had any connection with the alleged malpractice. In the case now before us, there was evidence that appellant's decedent was at all times suffering from the condition which ultimately caused his death. The issue of proximate cause was as to whether appellees' malpractice contributed to the cause of death. In this connection, the testimony that appellant's decedent would have had a better chance to survive if he had received prompt medical attention was sufficient to form a basis for the submission of the issue to the jury.
In LePrince, the second cited opinion above, this court affirmed a judgment based upon defendant's motion for judgment n.o.v. where a plaintiff's claim was for malpractice in the performance of a hysterectomy. This court held that of the five possible causes which the expert testimony showed could have contributed to the injury, only two were at all connected with the alleged malpractice. Our affirmance was based upon the holding in Lane v. White, supra. We held that to allow the case to go to the jury under the circumstances would be inviting the jury to engage in a guessing game, citing Horowitz v. Schwartz, Fla. 1954, 74 So.2d 801.
The Supreme Court of Florida has distinguished and limited the cited opinions in Wale v. Barnes, Fla. 1973, 278 So.2d 601. In Wale, the court held that where there is direct evidence as to the cause of the injury, the issue of proximate cause must be submitted to the injury. We think that there was both direct and circumstantial evidence as to the cause of the injury in this record.
In view of the holdings herein, we reverse the final judgment for the defendants and remand the cause with directions to enter judgment upon the verdict of the jury.
Reversed and remanded.
NOTES
[1] This appeal was filed January 3, 1973, and a decision thereon has been progressively and successively prevented by nine consecutive stipulations for extension of time to file the briefs in this cause. We mention this fact not by way of criticism of counsel but by way of explanation of the delay involved.