352 So.2d 1200 (1977)
Barbara DAWSON, Administratrix of the Estate of Jack Dawson, Deceased, Appellant,
v.
Wade S. WEEMS, M.D., E. Costatino, Jr., M.D., Henry L. Kaye, Esq., Administrator of the Estate Von D. Mizell, M.D., Deceased, North Broward Hospital District, a Political Subdivision of the State of Florida D/B/a Broward General Medical Center, Weems-Costatino, P.A., Professional Insurance Company of New York, a New York Corporation, Hartford Accident and Indemnity Company, a Connecticut Corporation, Argonaut Insurance Company, a California Corporation, Oscar S. Lenit, Jr., M.D., and Oscar S. Lenit, Jr., P.A., General Reinsurance Corporation, a New York Corporation, and Francis Everett Brander, As Lead Underwriter Subscribing to Certificate of Insurance Numbered 191-71-Mc-108, Appellees (Three Cases).
Barbara DAWSON, Administratrix of the Estate of Jack Dawson, Deceased, Appellant,
v.
Oscar S. LENIT, Jr., M.D., and Oscar S. Lenit, Jr., P.A., Appellees.
Nos. 76-32, 76-33, 76-40 and 76-189.
District Court of Appeal of Florida, Fourth District.
November 15, 1977.
Rehearings Denied January 10, 1978.
*1201 Robert Orseck, of Podhurst, Orseck & Parks, Miami, Sheldon J. Schlesinger of Simons & Schlesinger, and Susan Goldman, Miami, for appellant.
Paul R. Regensdorf, of Fleming, O'Bryan & Fleming, Fort Lauderdale, for appellee  North Broward Hospital District.
George E. Bunnell, of Huebner, Shaw & Bunnell, Fort Lauderdale, for appellees  Henry L. Kaye, Administrator of the Estate of Von D. Mizell, M.D., and Francis Everett Brander, as lead Underwriter subscribing to Certificate of Insurance.
Edna L. Caruso, of Montgomery, Lytal, Reiter, Denney & Searcy, West Palm Beach, for appellees  Lenit.
DOWNEY, Judge.
These consolidated cases arise out of appeals from separate orders entered in a medical malpractice suit brought by appellant against the North Broward Hospital District d/b/a Broward General Medical Center and three doctors, Weems, Costatino, Lenit and the personal representative of the estate of a fourth doctor, Von D. Mizell. A separate appeal by Weems and Costatino is treated in an opinion filed in Case No. 75-2298, Fla.App., 352 So.2d 1196.
Jack Dawson, appellant's decedent, while working on a construction site, fell one story and landed on a wheelbarrow, causing internal injuries. Dawson was admitted to North Broward Hospital on September 25, 1972, by Dr. Von Mizell, who assumed the general responsibility and management of the patient throughout his hospital stay. During the course of treatment, Dr. Mizell requested consultation with a general surgeon, Dr. Oscar S. Lenit, Jr., and with a firm of urologists, Weems and Costatino, P.A. On September 28, 1972, it was determined that surgery was indicated as a result of which Dawson's right kidney was removed. The evidence is clear that Dawson continued to have some internal bleeding after the operation, as well as some external bleeding at the operative site. The negligent conduct charged against all of the defendants in this case is asserted to have taken place during the days immediately following the kidney removal.
Dr. Oscar S. Lenit, Jr., M.D. (Cases No. 76-40 and 76-189).
The jury found Dr. Lenit not guilty and the trial court denied appellant's motion for a new trial as to Dr. Lenit.
Dr. Lenit is a general surgeon who was called in for consultation by Dr. Mizell. There was evidence adduced that during the course of the operation to remove Dawson's kidney Dr. Weems told a nurse to call Dr. Lenit to the hospital and that Dr. Lenit came into the operating room for a few minutes, looked at the patient and then departed, promising to be available if needed. Other witnesses testified that Dr. Lenit was never in the operating room and that he had no professional relationship with Dawson during or after the operation. Several experts testified that, whether or not Dr. Lenit was in the operating room, his conduct in the case did not fall below the required standard of care. On the other hand, one expert testified that, if Dr. Lenit had been in the operating room during the operation, he should have followed the patient thereafter. In any event, the testimony can be characterized as in conflict. There is substantial competent evidence to support the jury verdict in Lenit's favor and the trial judge, as he had a right to do on this record, approved the verdict by denying plaintiff-appellant's motion for new trial.
We have examined appellant's other contentions regarding the comments of Lenit's *1202 counsel in closing argument and fail to find any reversible error.
Dr. Von D. Mizell, M.D., (Case No. 76-33)
The court directed a verdict in favor of Dr. Mizell. It is this order which appellant appeals.
Dr. Mizell was the physician who admitted Dawson to the hospital and who continued in charge of Dawson's general management and care. However, the evidence does not show that Dr. Mizell acted in concert with Drs. Weems and Costatino vis-a-vis the kidney operation and post operative care and the ensuing complications. As. Dr. Turke, one of plaintiff-appellant's witnesses, testified:
"A Well, normally speaking, when a consultant takes over and does the operation, he is the primary treating physician at that time and the referring physician takes a back seat, unless there is some prior arrangement.
"Suppose an internist sends a patient to me and says, `I want you to follow the blood and the electrolytes'  that is all that he would be doing.
"But in a surgical procedure it is the surgeon's primary responsibility." (T. 688)
* * * * * *
"Do you have an opinion as to whether Von D. Mizell in any way deviated from the standards of care with regard to the care and treatment of this patient?
"A No.
"Q You have no opinion or he did not?
"A No, I don't think he deviated. He called in consults when he knew he was in over his head." (T. 671-672)
Thus, we believe the applicable rule is to be found in Dohr v. Smith, 104 So.2d 29 (Fla. 1958), rather than in O'Grady v. Wickman, 213 So.2d 321 (Fla.4th DCA 1968). In Dohr two of the patient's false teeth became dislodged and lost while the anesthetist was administering oxygen during surgery to remedy a duodenal ulcer. The plaintiff contended that both the surgeon and anesthetist were negligent, the surgeon vicariously as "captain of the ship." However, the court held:
"The surgeon may have been generally in command from the beginning of the operation to the end or, as appellants term him in the brief, `captain of the ship' but it is clear to us that he and the anesthetist were working in highly expert fields peculiar to each and that despite the common goal, the successful repair of the patient's ulcer, their responsibilities were not inextricably bound together. Hudson v. Weiland, 150 Fla. 523, 8 So.2d 37." 104 So.2d at 32.
Finally, we note that there is no expert testimony that Dr. Mizell's care and treatment of Dawson fell below the required standard of care. All of those expressing an opinion on the subject (one of whom was the plaintiff's expert) opined that Dr. Mizell's conduct was within the limits of the required standard of care.
Accordingly, in our opinion the trial judge was correct in directing a verdict in favor of the personal representative of Dr. Mizell's estate.[1]
North Broward Hospital District (Case No. 76-32)
The appellant appeals from the trial court's granting North Broward Hospital a directed verdict.
The focal period in this case is the post operative period from September 30 through October 2. Thus, the negligence of the North Broward Hospital District arises, if at all, out of the failure to respond to the need for furnishing fresh blood to Dawson during that three day period.
On September 30th, two days after the operation, Dawson was still suffering from internal bleeding from an unknown source and his blood chemistry was continuing to deteriorate. On that date, Dr. Costatino ordered two units of the "freshest blood available." That same night he again ordered one unit of the freshest blood possible. On October 1st Dr. Costatino ordered *1203 two units of blood for Dawson. And on October 2nd he ordered two units of the freshest blood be prepared and crossmatched and given that evening.
The hospital contends that it furnished "blood" or "freshest available blood" or "freshest possible blood" as ordered by the doctor. But the evidence shows that the hospital advised Dr. Costatino that it was having trouble getting fresh blood since there was difficulty in cross matching blood for Dawson. Dr. Costatino testified that he was told by the hospital blood bank that "in the morning they would call in another group of donors to check to see if they could get a walking fresh donor." There is also evidence that the first time the hospital ever asked Mrs. Dawson to bring in some neighbors or friends to be fresh donors was on the night of October 2nd. Mrs. Dawson furnished the donors the next morning, but Dawson expired in the early morning hours of October 3rd. It is clear from the evidence that bank blood is not as effective as fresh blood and that using bank blood did not give Dawson the best chance available to remedy his blood chemistry problems; that fresh blood would increase his chances of survival.
Finally, one of the appellant's experts testified that in a hospital the size of the North Broward Hospital you should be able to get fresh blood in a matter of an hour.
In its brief the hospital states:
"While the HOSPITAL takes no issue with the proposition that fresh blood may have been necessary to give MR. DAWSON his `best chance,' what is required in order to support the plaintiff's position on this appeal is some direct medical testimony to the effect that the failure to give such a best chance contributed to his death or that, if given, MR. DAWSON would have been alive today. In the absence of such testimony, it is respectfully submitted that the directed verdict in favor of the HOSPITAL must be affirmed."
But as appellant points out, the case of Hernandez v. Clinica Pasteur, Inc., 293 So.2d 747 (Fla.3d DCA 1974) rejected that contention of the hospital in stating:
"... The issue of proximate cause was as to whether appellee's malpractice contributed to the cause of death. In this connection, the testimony that appellant's decedent would have had a better chance to survive if he had received prompt medical attention was sufficient to form a basis for the submission of the issue to the jury." (Emphasis supplied.) Id. at 750.
In view of the foregoing, it appears to us that there was sufficient evidence upon which the jury could have found the hospital negligent. As the Supreme Court of Florida pointed out in Castlewood International Corporation v. LaFleur, 322 So.2d 520 (Fla. 1976), in contrasting our appellate function in reviewing an order granting a motion for directed verdict and an order granting a new trial:
"Where a trial judge is applying a rule of law such as ruling on a motion for a directed verdict, this is not a discretionary act, and an appellate court may substitute its judgment for that of the trial judge. However, where the act of the trial judge is a true discretionary act, the test of reviewability is entirely different." Id. at 523.
Accordingly, we find the trial court erred in directing a verdict in favor of the North Broward Hospital District.
The judgments appealed from in Cases Numbered 76-33, 76-40 and 76-189 are affirmed. The judgment appealed from in Case Number 76-32 is reversed and remanded for a new trial.
ALDERMAN, C.J., and PARHAM, HARRY C., Associate Judge, concur.
NOTES
[1] Dr. Mizell was deceased at the time of trial.