419 So.2d 1111 (1982)
UNIVERSITY HOSPITAL BUILDING, INC., d/b/a Memorial Hospital of Jacksonville, Its Nurses, Agents, Servants and Employees, Appellants,
v.
Emily GOODING, as Personal Representative of the Estate of T. Hagood Gooding, Deceased, Appellee.
No. VV-93.
District Court of Appeal of Florida, First District.
August 20, 1982.
Rehearing Denied October 13, 1982.
*1112 Rutledge R. Liles, of Howell, Howell, Liles, Braddock & Milton, Jacksonville, for appellants.
V. James Facciolo, of Searcy & Facciolo, P.A., Jacksonville, for appellee.
BOOTH, Judge.
This cause is before us on appeal from a final judgment entered in a wrongful death action against appellant, University Hospital Building, Inc.,[1] in favor of Emily Gooding, the widow and personal representative of T. Hagood Gooding, the deceased. On appeal, appellants contend that the verdict was against the manifest weight of the evidence; that the trial judge erred in failing to grant the hospital's motions for directed verdict and motion for judgment notwithstanding the verdict; and that the trial judge erred in giving plaintiff's requested jury instruction number 16.
Decedent, a 61-year-old man, experienced the onset of pain in his lower abdomen while at home. After contacting the office of his doctor, Dr. Borland, decedent was transported to the emergency room by ambulance. The emergency room staff was advised that decedent was coming to meet Dr. Borland, a gastroenterologist. That doctor, though present in the hospital and paged following decedent's arrival, did not, through circumstances not at issue here,[2] come to the emergency room until a few minutes before his patient's death.
The uncontradicted medical evidence was that decedent suffered a ruptured abdominal aortic aneurysm[3] prior to his admission *1113 to the hospital, a critical condition which will, in the absence of surgical intervention, cause death, usually within a few minutes, and that it did in fact cause his death after his admission to the emergency room.
In support of the charge of negligence and, specifically, the requisite causal connection between failure to exercise due care and the death of plaintiff's decedent, plaintiff relied on the testimony of Dr. Charles Bailey, an eminent cardiologist, who testified that the conduct of the emergency room staff did not meet acceptable medical standards in that there was a failure to take an adequate history and do an adequate physical examination or laboratory work.
The evidence shows that the emergency room staff was expecting, momentarily, the arrival of Dr. Borland, who was known to be in the hospital and aware of his patient's pending arrival. The patient did not appear to be in extremis on arrival, and there was testimony that he was reluctant to be examined by the emergency room doctor.
Emergency rooms are used for several types of patients: (1) true emergencies, and (2) convenient places for a doctor and his patient, needing prompt though not emergency care, to meet either while the doctor is in the hospital or after the doctor's regular office hours. Although there was evidence that patients of the second type, who enter the emergency room in order to meet their doctor there, are not generally treated by emergency room staff, Dr. Bailey testified that "good teaching hospitals" and the Joint Commission on Accreditation of Hospitals accord hospital staff concurrent responsibility for the immediate care of such patients.
In the instant case, the patient entered the hospital expressly to be seen by a doctor who was present in the hospital. However, unknown to anyone, the patient suffered a life-threatening condition which required immediate surgical intervention. The jury found that the failure of the emergency room staff to diagnose and immediately operate, even though awaiting the arrival of the patient's doctor, constituted negligence. The question is an extremely close one, but it is difficult to overturn the jury verdict on this point in view of the testimony of Dr. Bailey.
On the issue of causation, the diagnosis of a ruptured aortic aneurysm is concededly a difficult one to make, particularly in an obese patient such as decedent. Dr. Bailey testified to various diagnostic methods which have been used and to the percentages of success of each method in detecting the existence of a ruptured aneurysm. Dr. Bailey also testified that, had some appropriate diagnostic procedure been used and been successful in detecting the ruptured aneurysm, there was a 50 percent chance of saving the patient's life by immediate surgery.[4] Bailey testified that the 50 percent chance diminished minute-by-minute after the patient's arrival at the hospital and terminated when the patient attempted to use the bedpan shortly after 4:45 p.m. Therefore, under Dr. Bailey's testimony, if the emergency room staff had been able to diagnose the aneurysm and perform immediate surgery, within 45 minutes after the patient's arrival at the emergency room, the patient would have had a 50 percent chance of survival.
Causation in fact is proved by evidence that more likely than not defendant's negligence caused the injury. This same burden of proof applies regardless of whether the "but for" or the "substantial factor"[5] test is used. The rule is stated by *1114 Prosser as follows:[6]
On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. (emphasis added)
The testimony of plaintiff's expert, the strongest evidence presented on plaintiff's behalf, establishes that decedent's chances of survival, given all optimum conditions and prompt efficient action, where at best evenly balanced and less than probable. On this state of the proof, the case should not have been submitted to the jury.
The error in failing to direct a verdict was compounded by the court's giving of plaintiff's jury instruction number 16, which allowed the jury to find for the plaintiff if they found negligence on the part of the defendant "destroyed Mr. Gooding's chance for survival."[7] That special instruction was preceded by Standard Jury Instruction 5.19(a), which defines legal cause as requiring, inter alia, that the cause "produces or contributes substantially to producing such [loss] ..., so that it can reasonably be said that, but for the negligence the [loss] ... would not have occurred." Admittedly, the evidence here, taken in the light most favorable to plaintiff, does not meet the requirements of Instruction 5.1(a).
Plaintiff has supplied this court with a supplemental authority advocating a cause of action for negligent deprivation of a chance to survive with damages based on the following formula:
[D]ecedent was deprived of an X percent chance of surviving, that [the decedent's] life was worth Y dollars, and that as a result the value of the chance was X times Y dollars.[[8]]
However, plaintiff did not predicate her complaint upon such a theory of recovery and did not so limit her claim for damages. New theories of action can only be promulgated by statute or through interpretation of law consistent with public policy by case decisions of the highest court of the state, the Florida Supreme Court. Absent sanction by either entity, this court should adhere to the current state of the law, which permits recovery for wrongful death where the causal relationship between defendant's negligence and the death is established by standard burden of proof criteria.
In recognition of an apparent conflict[9] between our decision and that of the Third and Fourth District Courts of Appeal in Hernandez v. Clinica Pasteur, Inc., 293 So.2d 747 (Fla. 3d DCA 1974), and Dawson v. Weems, 352 So.2d 1200 (Fla. 4th DCA 1977), and the important public policy consideration inherent in the question presented, we certify the following questions to the Florida Supreme Court:

*1115 1. WHETHER PLAINTIFF IN A WRONGFUL DEATH ACTION MUST PROVE THAT MORE LIKELY THAN NOT THE DEATH WAS CAUSED BY DEFENDANT'S NEGLIGENCE.
2. WHETHER A THEORY OF RECOVERY FOR LOSS OF A CHANCE TO SURVIVE PREDICATED UPON ALLEGED MEDICAL MALPRACTICE IS ACTIONABLE IN FLORIDA; AND, IF SO, (A) WHETHER THE TRIAL COURT PROPERLY INSTRUCTED ON SAME, AND (B) WHAT IS THE APPROPRIATE MEASURE OF DAMAGES?
REVERSED.
JOANOS, J., concurs.
PEARSON, TILLMAN (Retired), Associate J., dissents without written opinion.
NOTES
[1] A directed verdict was entered in favor of co-defendant, Dr. Haswell, the emergency room physician.
[2] Dr. Borland was not made a defendant.
[3] In a letter written by Dr. Bailey to appellee's attorney, the doctor opined that "although it is not specified in the autopsy protocal, the designation as a `large sacular aneurysm of the distal abdominal aorta' probably means that it was located distal to the origins of the renal arteries."
[4] The 50 percent survival rate from an operation to repair an aortic aneurysm, testified to by plaintiff's expert, assumes proper diagnosis or high suspicion of same. Insofar as the possibility of survival rate fails to take into account the varying percentage rates of success of the different diagnostic procedures for aortic aneurysms, it actually should be further reduced.
[5] It is not at all clear that the "substantial factor" test applies in Florida. Voght, "Test of Causation and the Florida Jury Instructions  The Current Conflict and the Need for a Change," 32 U.Fla.L.Rev. 308 (1980).
[6] Prosser, Law of Torts, p. 241 (4th Ed. 1971); Restatement (Second) of Torts, 433(B), comments a and b.
[7] Jury Instruction No. 16 read as follows:

If you find that Hagood Gooding had a significant chance of survival and if you find that negligence on the part of the defendant, its agents or servants, destroyed Mr. Gooding's chances of survival, then the negligence of that defendant ... is a legal cause of injury.
This type of instruction has its origins in language in Hicks v. United States, 368 F.2d 626 (4th Cir.1966), a wrongful death action under Tort Claims Act. In that case, however, the court held (Id. at 632): "Both of plaintiff's experts testified categorically that if operated on promptly, Mrs. Greitens would have survived, and this is nowhere contradicted by the government expert." (emphasis added)
[8] Wolfstone & Wolfstone, "Recovery of Damages for the Loss of a Chance," Scalpel and Quill, Vol. XIII, No. 4 (December, 1979).
[9] The Third District Court of Appeal, in Hernandez v. Clinica Pasteur, Inc., 293 So.2d 747 (Fla. 3d DCA 1974), has recognized a right to recover in wrongful death for loss of a chance to survive. That case has been followed by the Fourth District Court of Appeal in Dawson v. Weems, 352 So.2d 1200 (Fla. 4th DCA 1977).