425 So.2d 84 (1982)
G. William LAZENBY, Appellant,
v.
Frederick BEISEL and Elizabeth Beisel, His Wife, Appellees.
No. 82-205.
District Court of Appeal of Florida, Second District.
December 17, 1982.
Rehearing Denied January 19, 1983.
*85 Thomas Saieva of Woodworth, Carlson, Meissner & Webb, St. Petersburg, for appellant.
Sam Daniels of Daniels & Hicks, Miami, and Anderson & Moss, P.A., Miami, for appellees.
GRIMES, Judge.
This appeal involves a consideration of the proper standard for proving causation in medical malpractice cases.
Frederick Beisel suffered from cataracts in both eyes. He consulted Dr. William Lazenby, an ophthalmologist, who decided to place a lens implant in the right eye. During the surgery, Dr. Lazenby gave Mr. Beisel a retrobulbar injection behind the eye. Within thirty seconds of the injection, the doctor noticed that the eyelids were beginning to bulge, a sign of retrobulbar hemorrhage. Dr. Lazenby stopped the operation and treated the hemorrhage by placing ice packs around the eye. He later performed a second successful operation, but Mr. Beisel can only see light from this eye.
Retrobulbar hemorrhages generally heal without treatment and cause no damage. However, occasionally the elevated pressure inside the eye produces a loss of vision, and there was general agreement that this occurred in Mr. Beisel's case. No one suggested that hemorrhage occurred through any fault of Dr. Lazenby. However, Mr. Beisel's expert witness, Dr. Soloway, testified that in the treatment of the hemorrhage, Dr. Lazenby should have either performed a lateral canthotomy or given Mr. Beisel Malatal or intravenous Diamox. A canthotomy consists of splitting the small triangle formed by the eyelids which allows the lids to open wider and the eye to move forward, thereby relieving the pressure. Malatal is a sugar which sucks water out of the eye and makes it soft, while the Diamox stops the production of fluid within the eye and also softens the eye.
On cross-examination, Dr. Soloway admitted that he could not state whether Mr. Beisel's eye would have been saved if Dr. Lazenby had performed a lateral canthotomy or administered either Malatal or Diamox. On redirect examination, counsel asked Dr. Soloway whether it was reasonably probable that one of the three methods of treatment he recommended would have saved the eye. Rather than directly responding to the question, Dr. Soloway stated that he had had three patients with severe retrobulbar hemorrhages whose sight had been saved after he performed a canthotomy. Two other ophthalmologists testified that Dr. Lazenby's treatment met accepted standards of care and that none of the treatments advocated by Dr. Soloway would have reduced the pressure in the amount necessary to save Mr. Beisel's sight. The jury awarded Mr. Beisel $40,000 and his wife $10,000 for loss of consortium.
Dr. Lazenby contends that the court erred in refusing to grant his motion for directed verdict because there was insufficient proof of proximate cause to make a prima facie case of medical malpractice. He also argues that even if the evidence was sufficient to survive the motion for directed verdict, the court erred in instructing the jury that negligence is a legal cause of injury or damage if it lessens a person's chance of complete recovery.
*86 Clearly, there was no evidence that the employment of any of the procedures outlined by Dr. Soloway would have probably saved Mr. Beisel's eye. Considering Dr. Soloway's testimony in its strongest light, he said only that he thought that the pressure in the eye might have been relieved if Dr. Lazenby had pursued one of his recommended courses of action.
The standard for proving proximate cause in Florida has traditionally been one of probability. Tampa Electric Co. v. Jones, 138 Fla. 746, 190 So. 26 (1939); Greene v. Flewelling, 366 So.2d 777 (Fla. 2d DCA 1979); Bryant v. Jax Liquors, 352 So.2d 542 (Fla. 1st DCA 1977). Notwithstanding, Mr. Beisel argues that negligence is a legal or proximate cause of the damage if it lessens a person's chances of recovery. There are two Florida decisions which support his argument. The first is Hernandez v. Clinica Pasteur, Inc., 293 So.2d 747 (Fla. 3d DCA 1974), in which the court made the following observation:
The issue of proximate cause was as to whether appellees' malpractice contributed to the cause of death. In this connection, the testimony that appellant's decedent would have had a better chance to survive if he had received prompt medical attention was sufficient to form a basis for the submission of the issue to the jury.
293 So.2d at 750. The other case is Dawson v. Weems, 352 So.2d 1200 (Fla. 4th DCA 1978), in which a hospital was charged with causing a patient's death by negligently furnishing him with bank blood rather than fresh blood. The court relied upon Hernandez v. Clinica Pasteur, Inc. to hold that evidence that the failure to furnish fresh blood had deprived the patient of the best available chance for recovery was sufficient to present a jury issue on proximate cause.
On the other hand, the First District Court of Appeal in University Hospital Building, Inc. v. Gooding, 419 So.2d 1111 (Fla. 1st DCA 1982), has recently reached a contrary conclusion. In that case, a doctor testified that the hospital staff was negligent in failing to perform an adequate diagnostic procedure upon a patient who died in the emergency room. However, the same doctor expressed the opinion that even if the hospital had followed the recognized diagnostic methods, the patient would have had no more than a fifty percent chance of survival. In reversing a judgment for the plaintiff, the court stated:
Causation in fact is proved by evidence that more likely than not defendant's negligence caused the injury. This same burden of proof applies regardless of whether the "but for" or the "substantial factor" test is used. The rule is stated by Prosser as follows:
On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. (emphasis added)
The testimony of plaintiff's expert, the strongest evidence presented on plaintiff's behalf, establishes that decedent's chances of survival, given all optimum conditions and prompt efficient action, were at best evenly balanced and less than probable. On this state of the proof, the case should not have been submitted to the jury.
419 So.2d at 1113-14 (footnote omitted).
The argument for reducing the standard for proving probable cause in cases like this apparently originated in Hicks v. United States, 368 F.2d 626 (4th Cir.1966), a medical malpractice case, in which the court said "[i]f there was any substantial possibility[1] of survival and the defendant has destroyed *87 it, he is answerable." 368 F.2d at 632. This doctrine has been followed in a few jurisdictions.[2] However, the greater number of courts addressing the issue have taken the traditional view.[3]
The court in Cooper v. Sisters of Charity compared the merits of the two positions when it said:
A rule, which would permit a plaintiff to establish a jury question on the issue of proximate cause upon a showing of a "substantial possibility" of survival, in our judgment, suffers the same infirmity as a rule which would permit proof of a "chance of recovery" to be sufficient. While the substantial possibility concept appears to connote a weightier burden than the chance of recovery idea, both derogate well-established and valuable proximate cause considerations. Traditional proximate cause standards require that the trier of the facts, at a minimum, must be provided with evidence that a result was more likely than not to have been caused by an act, in the absence of any intervening cause.
Lesser standards of proof are understandably attractive in malpractice cases where physical well being, and life itself, are the subject of litigation. The strong intuitive sense of humanity tends to emotionally direct us toward a conclusion that in an action for wrongful death an injured person should be compensated for the loss of any chance for survival, regardless of its remoteness. However, we have trepidations that such a rule would be so loose that it would produce more injustice than justice. Even though there exists authority for a rule allowing recovery based upon proof of causation by evidence not meeting the standard of probability, we are not persuaded by their logic.
272 N.E.2d at 103.
In the final analysis, we are reluctant to make a judicial exception to the established standard for proving the causal relationship between negligence and harm. We hold that the court should have granted Dr. Lazenby's motion for directed verdict.[4] However, pursuant to article V, section 3(b)(4) of the Florida Constitution and rule 9.030(a)(2)(A)(vi) of the Florida Rules of Appellate Procedure, we certify our decision to the supreme court as being in direct conflict with the decisions of our sister courts in Hernandez v. Clinica Pasteur, Inc. and Dawson v. Weems.
REVERSED.
OTT, C.J., and SCHOONOVER, J., concur.
NOTES
[1] While the court spoke in terms of substantial possibility, the statement was unnecessary to its decision because under the facts of the case the plaintiff's evidence satisfied the requirement of probability.
[2] Daniels v. Hadley Memorial Hospital, 566 F.2d 749 (D.C. Cir.1977); Thomas v. Corso, 265 Md. 84, 288 A.2d 379 (1972). In the opinion in Jones v. Montefiore Hospital, 494 Pa. 410, 431 A.2d 920 (1981), the Pennsylvania Supreme Court stated that evidence that a doctor's negligent conduct increased the risk of harm to the patient was sufficient to overcome a motion for directed verdict. However, the court went on to point out that the jury had to be instructed that before it could return a verdict for the plaintiff it must find that the increased risk of harm was a substantial factor in bringing about the harm which actually occurred. Thus, if the instant case had occurred in Pennsylvania, the court's ruling on the motion for directed verdict would be affirmed but the judgment would have to be reversed for a new trial upon proper instructions.
[3] Hiser v. Randolph, 126 Ariz. 608, 617 P.2d 774 (1980); Morgenroth v. Pacific Medical Center, 54 Cal. App.3d 521, 126 Cal. Rptr. 681 (1976); Connellan v. Coffey, 122 Conn. 136, 187 A. 901 (1936); Walden v. Jones, 439 S.W.2d 571 (Ky. 1969); Harvey v. Silber, 300 Mich. 510, 2 N.W.2d 483 (1942); Cooper v. Sister of Charity, 27 Ohio St.2d 242, 272 N.E.2d 97 (1971); see Annot., 13 A.L.R.2d 11, 24 (1950).
[4] Obviously, our decision moots the argument over the propriety of the disputed jury instruction. However, even if we had accepted Mr. Beisel's proposition of law, we would have still had to ponder the effect of the omission of the word "substantial(ly)" which is usually included within the definition of the reduced standard for proving proximate cause.