445 So.2d 1015 (1984)
Emily GOODING, as personal Representative of the Estate of T. Hagood Gooding, Deceased, Petitioner,
v.
UNIVERSITY HOSPITAL BUILDING, INC., d/b/a Memorial Hospital of Jacksonville, Etc., Respondent.
No. 62828.
Supreme Court of Florida.
January 19, 1984.
Rehearing Denied March 22, 1984.
*1016 Richard W. Ervin, Brian S. Duffy and Robert King High, Jr., of Ervin, Varn, Jacobs, Odom & Kitchen, Tallahassee, and V. James Facciolo of Searcy & Facciolo, Jacksonville, for petitioner.
Bruce S. Bullock and Robert M. Sharp of Bullock, Sharp, Childs, Mickler & Cohen, Jacksonville, for respondent.
Larry Klein, West Palm Beach, for Academy of Florida Trial Lawyers, amicus curiae.
Joel D. Eaton of Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, Miami, for Dade County Trial Lawyers Ass'n, amicus curiae.
James E. Cobb and Jack W. Shaw, Jr. of Mathews, Osborne, McNatt, Gobelman & Cobb, and John E. Thrasher, Jacksonville, for Florida Medical Ass'n, amicus curiae.
McDONALD, Justice.
This case is before us to review a district court decision, University Hospital Building, Inc. v. Gooding, 419 So.2d 1111 (Fla. *1017 1st DCA 1982), which certified the following questions:
1. WHETHER PLAINTIFF IN A WRONGFUL DEATH ACTION MUST PROVE THAT MORE LIKELY THAN NOT THE DEATH WAS CAUSED BY DEFENDANT'S NEGLIGENCE.
2. WHETHER A THEORY OF RECOVERY FOR LOSS OF A CHANCE TO SURVIVE PREDICATED UPON ALLEGED MEDICAL MALPRACTICE IS ACTIONABLE IN FLORIDA; AND, IF SO, (A) WHETHER THE TRIAL COURT PROPERLY INSTRUCTED ON SAME, AND (B) WHAT IS THE APPROPRIATE MEASURE OF DAMAGES?
Id. at 1115. We have jurisdiction under article V, section 3(b)(4) of the Florida Constitution. We answer the first question in the affirmative, the second question in the negative, and approve the decision under review.
On the afternoon of October 14, 1976 T. Hagood Gooding suffered lower abdominal pain and fainted at home. Mr. Gooding's wife called the office of Mr. Gooding's gastroenterologist, Dr. Borland, to inform Dr. Borland of these symptoms. Mr. Gooding was transported to the emergency room of Memorial Hospital of Jacksonville. The emergency room staff failed to take a history or to examine Mr. Gooding in the belief that Dr. Borland, who was in the hospital and aware that Mr. Gooding was coming to the emergency room, would arrive shortly. Dr. Borland did not respond to repeated paging. Mr. Gooding complained of increasing abdominal pain and asked to use a bedpan. Soon after straining on the bedpan, Mr. Gooding could not catch his breath. Dr. Borland arrived in the emergency room when Mr. Gooding went into cardiac arrest. Mr. Gooding died about forty-five minutes after arriving at the hospital. The autopsy revealed that he died from a ruptured abdominal aortic aneurysm which caused massive internal bleeding.
Emily Gooding, personal representative of Mr. Gooding's estate, brought a wrongful death action against the hospital alleging negligence by the emergency room staff in not taking an adequate history, in failing to physically examine Mr. Gooding, and in not ordering the laboratory tests necessary to diagnose and treat Mr. Gooding's abdominal aneurysm before he bled out and went into cardiac arrest. Mrs. Gooding's expert witness, Dr. Charles Bailey, a cardiologist, testified that the inaction of the emergency room staff violated accepted medical standards. Dr. Bailey, however, failed to testify that immediate diagnosis and surgery more likely than not would have enabled Mr. Gooding to survive. Even so, the trial court denied the hospital's motion for directed verdict on causation. In addition to the standard jury instruction on negligence and over the hospital's objection, the trial court instructed the jury that they could find for Gooding if the hospital destroyed Mr. Gooding's chance to survive.[1] The jury found the hospital liable and awarded $300,000 in compensatory damages to Gooding's estate.
The hospital appealed. The district court reversed on the grounds that the trial court should have directed a verdict in favor of the hospital because Mr. Gooding's chances of survival under the best of conditions were no more than even. The plaintiff, therefore, could not meet the more likely *1018 than not test for causation. The district court certified the questions above and recognized the apparent conflict between this decision and the decisions of the third and fourth districts in Hernandez v. Clinica Pasteur, Inc., 293 So.2d 747 (Fla. 3d DCA 1974), and Dawson v. Weems, 352 So.2d 1200 (Fla. 4th DCA 1977).
To prevail in a medical malpractice case a plaintiff must establish the following: the standard of care owed by the defendant, the defendant's breach of the standard of care, and that said breach proximately caused the damages claimed. Wale v. Barnes, 278 So.2d 601, 603 (Fla. 1973). In this case Dr. Bailey's testimony established the standard of care and the hospital's breach of that standard when its emergency room staff failed to diagnose and treat Mr. Gooding. The critical issue here is whether the district court correctly decided that the hospital was entitled to a directed verdict because the plaintiff failed to prove causation. We hold that it did and approve the decision of the district court.
In negligence actions Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injury. See Tampa Electric Co. v. Jones, 138 Fla. 746, 190 So. 26 (1939); Greene v. Flewelling, 366 So.2d 777 (Fla. 2d DCA 1978), cert. denied, 374 So.2d 99 (Fla. 1979); Bryant v. Jax Liquors, 352 So.2d 542 (Fla. 1st DCA 1977), cert. denied, 365 So.2d 710 (Fla. 1978). Prosser explored this standard of proof as follows:
On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant.
Prosser, Law of Torts § 41 (4th Ed. 1971) (footnotes omitted).
Mrs. Gooding first contends that the estate presented sufficient expert testimony for a jury to find the hospital's negligence more likely than not constituted a substantial factor in Mr. Gooding's death. She claims that the district court impermissibly reweighed the evidence and substituted its own judgment in place of the jury verdict. This is not so. Our review of the evidence convinces us that the testimony established a no better than even chance for Mr. Gooding to survive, even had there been an immediate diagnosis of the aneurysm and emergency surgery. Therefore, a jury could not reasonably find that but for the negligent failure to properly diagnose and treat Mr. Gooding he would not have died.
Mrs. Gooding also contends that Florida courts have recognized a cause of action for loss of a chance to survive, even where the patient's chances of survival were evenly balanced or less than likely in decisions of the third and fourth district courts of appeal in Hernandez v. Clinica Pasteur, Inc. and Dawson v. Weems. In Hernandez the wrongful death action was based upon the defendant's failure to diagnose and treat a heart condition when prompt diagnosis and treatment would have given the patient a better chance to live. The district court reversed a directed verdict in favor of the defendants, on the grounds that the plaintiff introduced sufficient evidence to create a jury question on causation.
The issue of proximate cause was as to whether appellees' malpractice contributed to the cause of death. In this connection, the testimony that appellant's decedent would have had a better chance to survive if he had received prompt medical attention was sufficient to form a basis for the submission of the issue to the jury.
293 So.2d at 750. In Dawson v. Weems the fourth district cited Hernandez to support *1019 a holding that a jury could properly find that a hospital caused a patient's death by giving him bank blood instead of the fresh blood requested, thereby depriving the patient of his "best chance" to survive, notwithstanding the plaintiff's failure to prove this deprivation either contributed to the patient's death or made his survival unlikely. 352 So.2d at 1203. These cases suggest a standard we cannot accept.
Neither Hernandez nor Dawson contains any reasoning or authority to support a rule relaxing the more likely than not standard of causation in medical malpractice actions although they do hold that a plaintiff may go to the jury on proximate cause merely by showing that the defendant decreased the chances for survival, no matter how small. Those cases are antithetical to our concept of proximate cause and are disapproved.
There is some authority for the loss of a chance to survive theory from other jurisdictions. The reasoning behind this theory was perhaps best stated in Hicks v. United States, 368 F.2d 626, 632 (4th Cir.1966) as follows:
When a defendant's negligent action or inaction has effectively terminated a person's chance of survival, it does not lie in the defendant's mouth to raise conjectures as to the measure of the chances that he has put beyond the possibility of realization. If there was any substantial possibility of survival and the defendant has destroyed it, he is answerable. Rarely is it possible to demonstrate to an absolute certainty what would have happened in circumstances that the wrongdoer did not allow to come to pass. The law does not in the existing circumstances require the plaintiff to show to a certainty that the patient would have lived had she been hospitalized and operated on promptly.
The plaintiff in Hicks, however, also met the more likely than not test because expert testimony established that the patient "would have survived" with prompt diagnosis and surgery. Id. In Hamil v. Bashline, 481 Pa. 256, 392 A.2d 1280 (1978), the Supreme Court of Pennsylvania approved the loss of a chance theory, citing Hicks and section 323(a) of the Restatement (Second) of Torts (1965). The Hamil court held that
once a plaintiff has demonstrated that defendant's acts or omissions, in a situation to which Section 323(a) applies, have increased the risk of harm to another, such evidence furnishes a basis for the fact-finder to go further and find that such increased risk was in turn a substantial factor in bringing about the resultant harm; the necessary proximate cause will have been made out if the jury sees fit to find cause in fact.
Id. at 272, 392 A.2d at 1288 (footnote omitted). The plaintiff in Hamil also met the more likely than not standard with expert testimony that the patient had a seventy-five percent chance of recovery with prompt treatment. Id. Other jurisdictions have allowed recovery even where the chance of survival was less than even. See James v. United States, 483 F. Supp. 581 (N.D.Cal. 1980) (negligent diagnosis which destroys even the smallest chance to prolong life or reduce suffering may be actionable); Kallenberg v. Beth Israel Hospital, 45 A.D.2d 177, 357 N.Y.S.2d 508 (N.Y. App. Div. 1974), affirmed, 37 N.Y.2d 719, 374 N.Y.S.2d 615, 337 N.E.2d 128 (1975) (proximate cause is a jury question where evidence indicates that the patient had a twenty to forty percent chance of survival with proper treatment); Hershovits v. Group Health Cooperative, 99 Wash.2d 609, 664 P.2d 474 (1983) (negligent diagnosis that reduced a patient's chance of survival from thirty-nine to twenty-five percent created jury question on proximate cause).
Relaxing the causation requirement might correct a perceived unfairness to some plaintiffs who could prove the possibility that the medical malpractice caused an injury but could not prove the probability of causation, but at the same time could create an injustice. Health care providers could find themselves defending cases simply because a patient fails to improve or where serious disease processes are not *1020 arrested because another course of action could possibly bring a better result. No other professional malpractice defendant carries this burden of liability without the requirement that plaintiffs prove the alleged negligence probably rather than possibly caused the injury. See e.g. Freeman v. Rubin, 318 So.2d 540 (Fla. 3d DCA 1975) (plaintiff in legal malpractice action must show that, but for the attorney's negligence, the plaintiff had a good cause of action in the underlying suit).[2] We cannot approve the substitution of such an obvious inequity for a perceived one.
We believe the better course would be to retain the more likely than not standard of causation in medical malpractice actions, as stated by the Supreme Court of Ohio as follows:
In an action for wrongful death, where medical malpractice is alleged as the proximate cause of death, and plaintiff's evidence indicates that a failure to diagnose the injury prevented the patient from an opportunity to be operated on, which failure eliminated any chance of the patient's survival, the issue of proximate cause can be submitted to a jury only if there is sufficient evidence showing that with proper diagnosis, treatment and surgery the patient probably would have survived.
Cooper v. Sisters of Charity of Cincinnati, Inc., 27 Ohio St.2d 242, 253-54, 272 N.E.2d 97, 104 (1971). In Cooper, as in the case at bar, the plaintiff sued a hospital and other health care providers for failing to properly diagnose and treat a patient in the hospital's emergency room. The patient in Cooper later died of a skull fracture which caused intracranial pressure and hemorrhage. The plaintiff's expert witness testified that the patient would have had about a fifty percent chance of survival with surgery. The Cooper court affirmed a directed verdict for the defendants, rejecting the plaintiff's arguments for a lesser standard of causation in loss of a chance cases.
Lesser standards of proof are understandably attractive in malpractice cases where physical well being, and life itself, are the subject of litigation. The strong intuitive sense of humanity tends to emotionally direct us toward a conclusion that in an action for wrongful death an injured person should be compensated for the loss of any chance for survival, regardless of its remoteness. However, we have trepidations that such a rule would be so loose that it would produce more injustice than justice.
Id., at 251-52, 272 N.E.2d at 103. Cooper has been followed in other jurisdictions, see Hiser v. Randolph, 126 Ariz. 608, 617 P.2d 774 (Ct.App. 1980); Morgenroth v. Pacific Medical Center, Inc., 54 Cal. App.3d 521, 126 Cal. Rptr. 681 (Ct.App. 1976), and reflects the majority rule of jurisdictions considering this issue.
We agree with the majority rule as enunciated in Cooper and hold that a plaintiff in a medical malpractice action must show more than a decreased chance of survival because of a defendant's conduct. The plaintiff must show that the injury more likely than not resulted from the defendant's negligence in order to establish a jury question on proximate cause. In other words, the plaintiff must show that what was done or failed to be done probably would have affected the outcome. In the case under review Mrs. Gooding failed to meet this test by presenting evidence of a greater than even chance of survival for Mr. Gooding in the absence of negligence. The district court properly ruled that the trial court should have granted the hospital's motion for directed verdict.
For the reasons stated above, we approve the decision under review and answer the first certified question in the affirmative and retain the more likely than *1021 not standard of causation in medical malpractice actions. We answer the second question on allowing recovery for the loss of a chance to survive in the negative. We leave the question of a proper instruction and measure of damages to a future case meeting the standard for recovery.
It is so ordered.
ALDERMAN, C.J., and BOYD, OVERTON and SHAW, JJ., concur.
ADKINS, J., dissents.
NOTES
[1] The actual causation instructions given are as follows:

"Negligence is a legal cause of death and damages if it directly and in natural and continuous sequence produces or contributes substantially to producing such death, so that it can reasonably be said that, but for the negligence, the death would not have occurred. If you find that Hagood Gooding had a significant chance of survival and if you find that negligence on the part of the defendant, its agents or servants, destroyed Mr. Gooding's chances for survival, then the negligence of that defendant or defendants  that defendant is a legal cause of injury". (Emphasis added.) In our view the trial judge erred in adding this change to the standard jury charges on legal cause.
[2] We have also held that a person convicted of crime is not entitled to relief from his conviction because of ineffective assistance of his counsel unless he could show that this deficient conduct likely affected the outcome of court proceedings. Knight v. State, 394 So.2d 997 (Fla. 1981).