655 So.2d 1169 (1995)
Raul RIVET, M.D., Appellant,
v.
Josephine PEREZ, as Personal Representative of the Estate of Mary Dominguez and as Guardian of Javier Dominguez, Iziquio Dominguez, Satdiel Dominguez, and Satdy Dominguez, and Pedro Rodriguez, individually; and Eugene Rivera, M.D., and Eugene Rivera, M.D., P.A., Appellees.
No. 93-2516.
District Court of Appeal of Florida, Third District.
May 10, 1995.
Rehearing Denied June 28, 1995.
*1170 Kuvin Lewis Restani & Stettin and R. Fred Lewis, for appellant.
Friedman & Friedman, and James C. Blecke for appellees.
Before HUBBART, BASKIN and GODERICH, JJ.
PER CURIAM.
The defendant, Dr. Raul Rivet, appeals from an adverse amended final judgment, from an adverse final cost judgment, and from the denial of several post-trial motions. We affirm.
In May 1989, Mary Dominguez was diagnosed as having a pituitary tumor. She was referred to Dr. Rivet, a Miami neurosurgeon, for diagnosis and treatment. After consulting with an ophthalmologist, Dr. Rivet concluded that surgery was needed to remove the tumor in the pituitary area of her brain.[1] The ophthalmologist, along with other physicians, recommended that Dr. Rivet use Dr. Eugene Rivera, an ENT specialist, to perform the surgical approach through the sinus cavity.
On May 17, 1989, Dr. Rivet and Dr. Rivera attempted the procedure to remove the pituitary tumor. They were both in the operating room as Dr. Rivera began the ENT portion of the procedure to surgically approach and provide entry into the sinus cavity. The patient was positioned according to the directions of Dr. Rivera. Dr. Rivera began his portion of the procedure by entering into an area through the patient's nasal cavity. He proceeded until he encountered unexpected bleeding. Dr. Rivera commented about the bleeding, but when Dr. Rivet asked if there was a problem, Dr. Rivera assured him that there was none. Dr. Rivera used surgical clips and packing to stop the bleeding, and then recommended terminating the surgery until the complication could be addressed. Dominguez was returned to the recovery area. She was expected to be under the effects of anesthesia until about 2:30 p.m., but when she did not respond by 4:50 p.m., Dr. Rivet ordered a CAT scan. When Dr. Rivet reviewed the CAT scan, he discovered that there was a mass in Dominguez' brain that represented either blood clots or gauze that required immediate removal. Dominguez was returned to surgery, and Dr. Rivet performed a craniotomy to relieve the pressure that had been created by the clotting, the clip, and the packing. At this time, Dr. Rivet discovered that Dr. Rivera had improperly entered the brain area as opposed to the sinus cavity, had caused a cerebral infarction, and had caused a substantial portion of her brain to die as a result of the reduced blood supply to the brain cells. Shortly thereafter, Dominguez died.
Her personal representative, Josephine Perez, brought the action below against Baptist Hospital, Dr. Rivet, and Dr. Rivera seeking damages. Specifically, the claims against Dr. Rivet alleged negligence by failing to supervise and assist Dr. Rivera, failing to recognize that Dr. Rivera had fractured the cribriform plate, failing to recognize that Dr. *1171 Rivera had lacerated an artery, permitting Dr. Rivera to use a metal clip to stop the bleeding, failing to recognize that Dominguez had a cerebral hemorrhage, and failing to perform surgery immediately to repair the hemorrhage.
The case proceeded to trial, and at the conclusion of the plaintiff's case, Dr. Rivet requested entry of a directed verdict alleging that the plaintiff had not established a prima facie case of negligence and that he had not deviated from the standard of care. The trial court reserved ruling. At the close of all the evidence, Dr. Rivet renewed his motion for directed verdict. The court denied his motion and submitted all issues to the jury on a special interrogatory verdict form.
The jury found that Dr. Rivet and Dr. Rivera were negligent and apportioned damages in the amounts of 36% and 64%, respectively. Dr. Rivet timely filed post-trial motions seeking entry of a directed verdict, a new trial, or a remittitur. The trial court denied these motions, and this appeal follows.
The defendant, Dr. Rivet, raises several points on appeal. We find that only one merits discussion. Dr. Rivet contends that the trial court erred, as a matter of law, by denying the defendant's motions for summary judgment, directed verdict, or new trial where there was insufficient evidence of causation to establish a prima facie case of medical negligence in connection with the death of Dominguez. We disagree.
In Gooding v. University Hospital Building, Inc., 445 So.2d 1015 (Fla. 1984), the Florida Supreme Court set out the standard for causation in a medical malpractice case:
To prevail in a medical malpractice case a plaintiff must establish the following: the standard of care owed by the defendant, the defendant's breach of the standard of care, and that said breach proximately caused the damages claimed... .
In negligence actions Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injuries.
Gooding, 445 So.2d at 1018 (citations omitted).
In the instant case, the plaintiff's expert, Dr. Jack Barrett, a neurosurgeon, provided unobjected to testimony at trial that Dr. Rivet fell below the standard of care and that his actions ultimately caused the patient's death. Specifically, Dr. Barrett stated that Dr. Rivet was careless and fell below the standard of care by relying on Dr. Rivera's assumptions once Dominguez began bleeding profusely, and by waiting two and a half hours after surgery before performing a CAT scan. Had Dr. Rivet not relied on Dr. Rivera's assumptions and had Dr. Rivet ordered a CAT scan immediately after the first surgery, Dr. Rivet would have been alerted to the problem and would have performed the craniotomy necessary to relieve the pressure much sooner. Further, Dr. Barrett explained, "If [Dr. Rivet] had operated promptly, I would think she had probably a 51% chance of surviving."
We find that the plaintiff's expert's testimony indicating that the patient had a 51% chance of survival had Dr. Rivet operated immediately meets "the more likely than not" standard of causation required by Gooding. This testimony regarding proximate cause, coupled with that of the standard of care and of Dr. Rivet's breach of that standard of care, establishes a prima facie case of negligence. Therefore, the trial court properly denied the defendant's motions for summary judgment, directed verdict, or new trial.
Affirmed.
NOTES
[1] To remove a pituitary tumor, two surgeons are required. The Ear, Nose and Throat [ENT] specialist provides access into the internal area of the brain to where the tumor is located through the nasal area and a sinus cavity. Then, the neurosurgeon removes the tumor.