ZEHMER, Judge,
concurring in part and dissenting in part.
I fully concur in Judge Shivers’ opinion for the majority to the extent that he concludes the trial court did not err in failing to direct a verdict for Dr. Pohl because the record contains sufficient evidence to support the jury’s finding that defendant deviated from standards of care required of orthopedic surgeons in his treatment of plaintiff. I likewise fully concur that there is competent evidence in the record from which the jury could find that as a result of Dr. Pohl’s negligence plaintiff sustained an aggravation to his injuries and pain and suffering for which he is entitled to recover compensatory damages. I disagree, however, that the case should be remanded for a new trial on damages to resolve the relationship between Dr. Pohl’s deviation from the standards of care, i.e., his negligence, and the ultimate condition of Mr. Witcher’s ankle. Rather, I would prefer to affirm the judgment below for failure of the defendant to request an appropriate instruction on apportionment of damages (standard jury instruction 6.2(b)) and failure to properly preserve this issue for review on appeal. Nevertheless, for the reasons hereafter discussed, I join with Judge Shivers in reversing and remanding for a new trial on damages.
The record clearly supports a finding of liability because Dr. Pohl’s negligent treatment aggravated plaintiff’s condition and caused certain damages which plaintiff is entitled to recover; there is no question, therefore, but that this case had to be submitted to the jury for a determination on the amount of damages for which Dr. Pohl should be held liable. Yet no instruction on apportioning responsibility for damages to Dr. Pohl was requested or given, and no argument on appeal questions the manner in which the damages issue was submitted to the jury. In my view, there should have been such an instruction.
Liability for damages was obviously complicated by the fact that plaintiff injured his ankle playing softball and then went to see Dr. Pohl for treatment. Consequently, the negligent treatment by Dr. Pohl which aggravated plaintiff’s existing athletic injury should be deemed in law to be a second injury subject to the rule that where two successive accidental injuries occur and the defendant is responsible only for the second, the burden is on the plaintiff to prove to the extent reasonably possible what portion of the aggravated injury is attributable to each of the two accidents. In such cases, the jury should be instructed to make an apportionment of the plaintiff's condition attributable to the aggravation insofar as it may be reasonably possible to do so and hold the defendant liable only for that portion attributable to him. Only if such apportionment is impossible is the jury authorized to charge the defendant causing the second accidental injury with all damages flowing from the resulting condition attributable to both injuries. Washewich v. LeFave, 248 So.2d 670 (Fla. 4th DCA 1971); Wise v. Carter, 119 So.2d *1021 40 (Fla. 1st DCA 1960); Security Mutual Casualty Co. v. Bleemer, 327 So.2d 885 (Fla. 3d DCA 1976).
These and other Florida decisions on this subject, as well as standard jury instruction 6.2(b), are based on the Supreme Court decision in Hamblen, Inc. v. Owens, 127 Fla. 91, 172 So. 694 (1937). In Washewich v. LeFave, the court stated:
It is a fundamental principle applicable to the law of negligence that where one seeks to recover damages by reason of the negligence of another, the former must not only prove the extent of his injuries, but also that they were proximately caused by the negligence of the latter. (Citation omitted.) This requirement is somewhat relaxed, however, where the evidence indicates that the defendant’s negligence has proximately resulted in an aggravation of a pre-existing injury and the entire consequence cannot reasonably be divided as between several independent causes. In Hamblen, Inc. v. Owens, 1937, 127 Fla. 91, 172 So. 694, 696, the Florida Supreme Court stated: ‘ * * * The defendant must respond in damages for such part of the diseased condition as his negligence has caused and if there can be no apportionment, or it cannot be said that the disease would have existed apart from the injury, then he is responsible for the diseased condition. * * *’
248 So.2d at 672. The court in Waskewich commented on the defendant’s argument that he should be entitled to a directed verdict because the plaintiff’s proof did not show the precise extent to which the defendant’s conduct contributed to the injury and stated:
We disagree with the defendant’s premise. The rule of Hamblen, Inc. v. Owens has as its purpose the prevention of a subsequent wrongdoer from escaping responsibility where his conduct contributed to the creation of the situation in which the problems of apportionment arose. If we are correct in this, it follows that the rule would apply regardless of whose fault caused the first accident.
248 So.2d at 673.
These principles have been applied in medical malpractice actions where a doctor has been sued for negligently treating a traumatic injury caused in a prior accident. E.g., Schwab v. Tolley, 345 So.2d 747 (Fla. 4th DCA 1977); Singleton v. West Volusia Hospital Authority, 442 So.2d 235 (Fla. 5th DCA 1983); Mack v. Garcia, 433 So.2d 17 (Fla. 4th DCA 1983).
In Schwab v. Tolley, the defendant argued that plaintiff Tolley’s evidence failed to show he would have been able to return to gainful employment despite injuries received in the first accident and, therefore, the physician charged with medical malpractice could not be held responsible for that element of damages. The court noted, “It is an absolute certainty in the instant case that, as a result of either the automobile collision or the surgery or both, Dr. Tolley is a permanent quadriplegic who can never practice dentistry again. No one quarrels with this.” 345 So.2d at 750. The court then discussed the testimony of several physicians, some of whom testified that had the operation not been performed by the defendant, Dr. Schwab, there was a distinct possibility that Tolley’s condition could have improved to the point that he could return to his dental practice. Thus, the court noted that the defendant’s argument “would be tenable only if the evidence, construed most favorably for the plaintiffs, established a negative: That Dr. Tolley could not have practiced dentistry again as a result of the collision irrespective of the surgery.” 345 So.2d at 751. The court then held that the issue of apportioning damages was properly submitted to the jury because the physician could be held liable for the whole of the damages if it was impossible for the jury to apportion the condition between the injury caused by the medical malpractice and the injury caused by the original automobile collision.
In Singleton v. West Volusia Hospital Authority, 442 So.2d 235, the trial court directed a verdict for the defendant hospi *1022 tal after close of the plaintiff’s evidence. Reversing, the court stated:
Contrary to defendant’s contention, there was evidence presented from which a jury could conclude that the employees of the defendant hospital could have diagnosed plaintiff's condition on the three occasions when he came there complaining of severe abdominal pains, had he been checked properly. There was also testimony that when plaintiff’s mother called the hospital on a fourth occasion to advise that plaintiff was still experiencing severe pain, she was told not to bring him back. Plaintiff's medical expert testified that under the circumstances, this conduct deviated from the accepted standard of medical care, and that had the proper tests been performed, plaintiff’s appendicitis could have been diagnosed before his appendix ruptured. This evidence is sufficient to show a causal relationship between the alleged negligent acts of defendant and the ultimate aggravation of plaintiff’s medical condition.
442 So.2d at 235.
Mack v. Garcia is much more akin to the facts in the instant case. The plaintiff, Eleanor Mack, fell and broke her wrist. The defendant, Dr. Garcia, diagnosed the fracture and treated it by attempting to align the bones and applying a cast. X rays disclosed that this treatment failed to reduce or align the wrist. Nevertheless, Dr. Garcia did not reset the wrist, but left it cast in a neutral position and told Ms. Mack she would have a slight deformity. Ms. Mack continued to experience swelling and pain and returned to the doctor on several visits. Despite the advice of her husband, friends, and neighbors, she failed to seek the advice of another physician. She sued Dr. Garcia for malpractice and the jury awarded her damages in the amount of $25,000, which were reduced by ninety percent for her failure to mitigate damages, apparently predicated on her failure to seek the advice and treatment of another physician.
At trial, the plaintiff requested a jury instruction on aggravation of an existing injury based on Florida Standard Jury Instruction 6.2(b), which was denied. On appeal, the court held that it was reversible error not to have given the requested instruction because it was clear from the evidence that Dr. Garcia’s treatment of the plaintiff contributed to her injuries and damages. It is interesting to note that the court also held it was reversible error not to strike the defense that plaintiff failed to mitigate her damages because public policy dictates that a patient does not have an obligation or duty to determine whether an injury is being properly treated by a physician.
The reason the instant case presents such a perplexing quandary on appeal is that neither party has addressed the issue of apportionment of liability for damages. Perhaps the plaintiff was satisfied that the evidence was such that no basis for apportionment could be found by a jury and for this reason declined to request standard jury instruction 6.2(b). Defendant, on the other hand, undoubtedly elected to place all his eggs in one basket and go for a directed verdict on the issue of liability based on the principle that plaintiff failed to show that his resulting condition more likely than not resulted from defendant physician’s alleged negligent treatment and, thus, failed to make out a jury question of proximate cause, citing Gooding v. University Hospital Building, Inc., 445 So.2d 1015 (Fla.1984), and Beisel v. Lazenby, 444 So.2d 953 (Fla.1984). Relying on these cases, appellant argues that plaintiff’s evidence failed to establish that the ultimate condition of his ankle injury was any worse because of Dr. Pohl’s treatment than it ultimately would have been had Dr. Pohl properly treated it. In my view, this is a total misapplication of Gooding and Beisel. These two decisions, respectively, involved damage claims for the loss of life and loss of an eye. The court properly held that to prove causation between the asserted negligence and the ultimate loss of life or an eye, the plaintiff was obligated to prove it was more likely than not that the conduct of the defendant was a substantial factor in bringing about the ultimate result and *1023 that when the probabilities of such causation are, at best, evenly balanced, it becomes the duty of the court to direct a verdict for the defendant. In the instant case, the trial court ruled the evidence was legally sufficient to show the requisite causation between Dr. Pohl’s negligence and an aggravation of plaintiffs condition giving rise to compensable damages and denied the motion for directed verdict, a ruling which we now affirm. Once that ruling was made by the trial court, the question then became one of apportioning the resulting condition between the negligence of Dr. Pohl and the original injury, if such apportionment was, in fact, possible. I find nothing stated in Gooding or Beisel that suggests any intent to overrule or recede from the Florida decisions dealing with apportionment of damages in medical malpractice cases once the requisite causation of recoverable damage has been established. Neither case discussed the matter of apportionment.
The only point raised by appellant is the failure of the trial court to grant his motion for directed verdict on liability for insufficient evidence of causation. But the trial court, as we have found, did not err in denying that motion. Since appellant raised no other point questioning the failure to apportion damages, appellant failed to properly preserve such issue for appellate review.
Each judge on this panel, however, is concerned that Dr. Pohl be held liable only for the condition of plaintiff’s ankle attributable to his negligent treatment, in accordance with the applicable rules of law. Since the basis for my conclusion is procedural deficiencies rather than the merits of plaintiffs claim, and since the burden is generally on the plaintiff to prove and have the jury instructed on apportioning damages where aggravation of an existing injury is involved (which he failed to do here), I join with the majority in affirming the judgment of liability, vacating the damage award, and remanding for a new trial only on the issue of damages, in accordance with the law relating to apportionment discussed above.