FERNANDEZ, J.
Rolando P. Ruiz, etc., appeals from a final judgment entered in favor of appel-lees Tenet Hialeah Healthsystem, Inc. and Arturo Lorenzo, M.D., and the denial of his motion for reconsideration of the trial court’s directed verdict in this medical malpractice action, or in the alternative, for a new trial. We affirm the trial court’s entry of directed verdict in favor of Dr. Lorenzo because there is no competent, substantial evidence that Dr. Lorenzo caused the tragic death of Ruiz’s wife.
Ruiz, the personal representative of the Estate of Maria Elena Espinosa, sued to recover damages for the death of his wife Espinosa who died of exsanguination during a surgical procedure to remove a cancerous tumor from her skull. Dr. Lorenzo is the anesthesiologist who conducted Es-pinosa’s pre-anesthesia evaluation.[1]
Dr. Lorenzo declared in his sworn answer to an interrogatory that “[a]ll [he] did was [Espinosa’s] anesthesia preparation evaluation.” Dr. Lorenzo testified at trial that he saw Espinosa for three to five minutes after which Dr. Velazquez completed the evaluation. Dr. Lorenzo check marked a series of boxes on the pre-anes-thesia evaluation. He signed the evaluation under the line marked “Physician” and wrote the date and time. He told Dr. Velazquez that “[t]here is nothing, no major medical problems whatsoever. You may want to take a look at the EKG.” Dr. Lorenzo saw the EKG, which was blurry but readable. The EKG reflected an abnormality. He told Dr. Velasquez that the EKG was blurry. Dr. Lorenzo neither advised Dr. Yates or Dr. Albanes that the EKG was blurry nor advised that it reflected an abnormality. Dr. Lorenzo testified that the abnormal EKG did not mean anything in light of the number of abnormal EKGs he saw on an average week. The history and physical well-being of the patient must be considered and Espinosa was one of the healthiest patients he had ever seen.
Dr. Lorenzo further testified that he never saw the protein level in Espinosa’s urine. He reviewed only the first page of lab results. The remaining two pages of lab results included the results of Espinosa’s urinalysis, which reflected an abnormal amount of protein in her urine. Dr. Lorenzo testified that, had he seen the protein level, he would have told Dr. Yates that he needed to “find out” why Espinosa was “spilling protein.” Dr. Lorenzo testified that the protein level would not have affected his anesthetic.
Dr. Velazquez testified that he did a full evaluation on Espinosa from beginning to end after Dr. Lorenzo’s evaluation. Dr. Velazquez completed and signed the anesthesia evaluation. He evaluated the EKG and all three pages of Espinosa’s lab results. He also made the determination that Espinosa could safely undergo general anesthesia.
Numerous other witnesses testified at trial. Dr. Y^tes and Dr. Albanes testified. Ruiz introduced the expert testimony of anesthesiologist Dr. William Mazzei, neurosurgeon Dr. Michael Joseph Chaparro, and Dr. Carlos Moreau, anesthesiologist *830 and Medical Director at the hospital where Espinosa died. None of the expert witnesses testified that Dr. Lorenzo’s evaluation of Espinosa fell below the standard of care such that any breach more likely than not caused Espinosa’s death.
The trial court granted Dr. Lorenzo’s motion for directed verdict, finding that there was no proof of causation. We agree with this conclusion.
A de novo ' standard of review governs the review on appeal of a trial court’s decision to grant a directed verdict. Hancock v. Schorr, 941 So.2d 409, 412 (Fla. 4th DCA 2006). The plaintiff in a medical malpractice ease must establish (1) the standard of care the defendant owes; (2) the defendant’s breach of the standard of care; (3) and that said breach proximately caused the damages claimed. Chaskes v. Gutierrez, 116 So.3d 479, 485 (Fla. 3d DCA 2013). See also Hancock, 941 So.2d at 412. “Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiffs injury.” Chaskes, 116 So.3d at 487; Hancock, 941 So.2d at 412.
While all evidence must be viewed in a light most favorable to the nonmoving party, the court can only rely on reasonable conclusions drawn from competent, substantial evidence upon which a jury could rationally rely in finding for the non-movant. Hancock, 941 So.2d at 409. A-review of the record in the light most favorable to Ruiz supports the trial court’s conclusion on the issue of causation. There is no competent, substantial' evidence at trial from which a jury could reasonably conclude that Dr. Lorenzo’s' behavior fell below’the standard of care, or that' any breach of the standard of care more likely than not caused Espinosa’s death. It is undisputed that Dr. Lorenzo conducted a brief anesthesia evaluation on Espinosa and that he signed the anesthesia evaluation. The evidence is unequivocal that Dr. Velasquez completed the, full anesthesia evaluation from, beginning to end.
In addition, the record is devoid of competent, substantial evidence upon which to conclude that the blurry EKG or the abnormal protein level results caused Espi-nosa’s death. The record reflects that no cardiac issues precluded Espinosa from undergoing safe anesthesia. Espinosa’s autopsy revealed no' evidence of coronary artery disease. The record is abundantly clear that the primary cause of Espinosa’s death was exsanguination.
The trial court thus correctly granted Dr. Lorenzo’s motion for directed verdict. We therefore affirm.
Affirmed.
SUAREZ, J., concurs.

. The defendants at trial included one internist, anesthesiologists Dr. Lorenzo and Dr. Guillermo Velasquez, and neurosurgeons Dr. Basil Yates and Dr. Pedro Albanes. The internist and Dr. Velazquez settled before trial. Dr. Yates, Dr. Albanes, and Dr. Lorenzo proceeded to trial. The jury returned a verdict against Dr. Yates' and Dr. Albanes after which they settled. The jury assigned no liability to Dr. Velazquez.