[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT

_____

No. 19-13575

_____

D.C. Docket No. 1:18-cv-21085-MGC


BLANCA PRIETO,

Plaintiff-Appellant,

versus

TOTAL RENAL CARE, INC.,

Defendant-Appellee.

_____

Appeal from the United States District Court
for the Southern District of Florida

_____

(February 12, 2021)

Before WILSON, LAGOA, and BRASHER, Circuit Judges.

PER CURIAM:

Plaintiff Blanca Prieto ("Prieto"), as personal representative of the Estate of

Rodolfo Prieto, appeals from the district court's order granting defendant Total

Renal Care, Inc., d/b/a Davita Dialysis Centers d/b/a Florida Renal Care's ("TRC"),

motion for judgment as a matter of law under Federal Rule of Civil Procedure 50(a) on the issue of proximate causation. Specifically, the district court found that Prieto failed to introduce evidence which afforded a reasonable basis for the conclusion that TRC's negligence more likely than not was a substantial factor in causing Mr. Prieto's injuries. Because Prieto failed to present any evidence that could support a jury's finding that TRC's alleged negligence in failing to send Mr. Prieto home on a stretcher more likely than not caused his injuries—an essential element of Prieto's medical malpractice claim—we conclude that the district court did not err in entering judgment as a matter of law in TRC's favor and affirm.

## I.    FACTUAL AND PROCEDURAL HISTORY

On January 2, 2016, Rodolfo Prieto ("Mr. Prieto"), a seventy-six-year-old man, was injured when he fell from a wheelchair while being driven in a medical transportation van from his dialysis appointment at one of TRC's dialysis centers back to the University Plaza Rehabilitation Center ("University Plaza") where he was living.

On March 21, 2018, Prieto, as the personal representative of Mr. Prieto's estate, filed this lawsuit against TRC,[1] alleging a claim for nursing negligence under Florida Statute § 766.102 ("Count I") and a claim for healthcare center liability

---

[1] The company that owned the medical transportation van, identified by the district court as American Ambulance, was not a party to the suit as Prieto had previously entered into a settlement with American Ambulance.

under Florida Statute § 766.106 ("Count II").[2]  In her complaint, Prieto alleged the

following facts. On January 2, 2016, Mr. Prieto was leaving TRC's dialysis center

"by medical transport van, as he had done on countless prior occasions, and being

taken back to University Plaza."  During the drive back to University Plaza, "the

van's brakes were suddenly applied which caused [Mr. Prieto] to fly forward, out of

his wheel chair, and sustain various injuries, to wit, a severely fractured right leg,

head lacerations, and hospitalization." (emphasis in original omitted).  Prieto alleged

that TRC

> negligently allowed [Mr. Prieto] to exit its facilities by
> wheelchair when his medical condition, as known by the
> Defendant, and as dictated and established by the
> Defendant, whose principal owner was [Mr. Prieto's]
> actual treating nephrologist, required his daily, ongoing,
> and consistent transport to be by way of stretcher due to
> serious medical limitation/restrictions that made it unsafe
> for him to be transported in any other manner.

(emphasis in original omitted).  Prieto also alleged that TRC's "failure to render the

nursing care that would have consisted of making sure [Mr. Prieto's] medical

transportation home was by stretcher . . . was a deviation from the standard of

nursing care, and was a breach in the nursing standard of care that fell below the

---

[2]    Because this case arises under diversity jurisdiction, we apply Florida medical malpractice law. *Ins. Co. of N. Am. v. Lexow*, 937 F.2d 569, 571 (11th Cir. 1991) ("In a diversity case, a federal court applies the substantive law of the forum state, unless federal constitutional or statutory law is contrary.").

industry standard, and as such was the causation, proximate, and legal cause, and/or the concurring cause, of [Mr. Prieto's] injuries." (emphasis in original omitted). Prieto further alleged that she had complied with all pre-suit notice statutory requirements for medical negligence causes of action, and she attached to the complaint a November 10, 2017, affidavit of Nurse Erika Hall, an adult nurse practitioner. [3]

As to Count I, Prieto alleged that TRC's nursing staff's failure to send Mr. Prieto home on a stretcher

> was a breach of the prevailing standard of care, and the subsequent driving incident that took place during his transport from the Defendant's facility back to his assisted living facility was the concurrent condition caused by the Defendant so that it can be said that a sudden vehicular stop by the transport vehicle alone would not have [led] to [Mr. Prieto's] injury, but could only have occurred due to the Defendant's failure to make sure that he was leaving their facility in a secure position via stretcher, and therefore the negligence condition created by the Defendant was the legal and proximate cause, and/or the concurring cause which caused [Mr. Prieto's] injuries.

(emphasis in original omitted).  As to Count II, Prieto alleged that TRC's staff breach of the standard of care owed to Mr. Prieto by sending him home on a stretcher "was

---

[3]  Among other things, Nurse Hall stated in her affidavit that "the nursing standard of care was deviated by the Head RN of [TRC] in allowing Mr. Prieto to leave in a wheelchair" and that "[i]f he had been sent home via a properly restrained stretcher . . . , he would not have sustained injury from a sudden traffic stop."

the legal and proximate cause, and/or a concurring event that caused [Mr. Prieto's] right leg fracture."

TRC filed an answer denying all allegations of negligence, causation, and damages and alleging numerous affirmative defenses, including that the entities and individuals responsible for transporting Mr. Prieto from TRC's facility on January 2, 2016, were responsible for an intervening and superseding negligent act not subject to TRC's control.

Pursuant to a pretrial stipulation, damages were limited to Mr. Prieto's pain and suffering from the date of his injury until the time of his death. The matter then proceeded to a three-day trial where Prieto presented the testimony of Dr. Hassan Ali, Head Nurse Sergio Alfonso, and patient care technician Yureiesky Ventura Valdez, as well as the testimony of Nurse Hall as an expert witness.[4]

Dr. Ali was Mr. Prieto's nephrologist and the medical director of Florida DaVita Renal Center, which is a subsidiary of TRC. During trial, in portions of deposition testimony read to the jury, Dr. Ali testified that Mr. Prieto's health at the time of the accident included "complications of diabetes," such as diabetic nephropathy, eye problems, heart disease, a below-the-knee left leg amputation, and

---

[4] TRC states that there were other witnesses at trial, but that Prieto only had select portions of the trial transcribed. In her initial brief and reply brief, Prieto relies only on the testimony of Dr. Ali, Nurse Alfonso, and technician Ventura Valdez. In its answer brief, TRC discusses the testimony of Nurse Hall. We are therefore only able to consider the testimony of these witnesses.

amputation of several toes from his right foot. Mr. Prieto also suffered from "end-stage renal disease." The jury further heard from Dr. Ali's deposition testimony that, from November 2, 2015, through December 31, 2015, Dr. Ali had recommended that Prieto be transported to and from dialysis by stretcher, and that a summary treatment sheet showed that Prieto presented for his dialysis care on a stretcher and, after treatment, was placed back on a stretcher eighteen times from November 2, 2015, through December 31, 2015. In his deposition testimony, Dr. Ali further agreed that on January 2, 2016, Mr. Prieto should have been transported back home by stretcher, and that TRC was responsible for Mr. Prieto "until he hits the door."

Dr. Ali also testified in person at trial. Dr. Ali testified that the medical facility was not involved in "the mode of transportation" and that transportation of a patient was arranged by the patient or the patient's representative. Dr. Ali testified that Mr. Prieto's nursing home was the patient representative who arranged the transportation. Relevant here, Dr. Ali did not offer an opinion as to whether Mr. Prieto would have suffered injury had he returned on a stretcher that was bolted to the van's floor. Dr. Ali testified that he did not agree that on January 2, 2016, Mr. Prieto should have been transported home on a stretcher, and Prieto impeached Dr. Ali with his deposition testimony on this issue. On redirect, Dr. Ali testified that every one of his patients is a fall risk.

6

Prieto then presented the testimony of Nurse Alfonso and read portions of his deposition to the jury. In his deposition, Nurse Alfonso agreed that Mr. Prieto was the kind of patient who needed to be transferred by stretcher. During his trial testimony, Nurse Alfonso clarified that the level of transportation for Mr. Prieto was determined by his place of transportation. Nurse Alfonso testified that on the day of his treatment, Mr. Prieto finished his dialysis in a "stable manner" and left in a wheelchair. When asked by Prieto's attorney whether it would have been better to send Mr. Prieto out of the facility secured and strapped down on a stretcher, Nurse Alfonso stated that his training was not in transportation.

Prieto also called Nurse Hall, an adult nurse practitioner, to testify as an expert in the field of nursing. Nurse Hall explained that she works for a company that provides health care to inmates at the Hillsborough County Jail, and at any given time, two to three of her patients at the jail are on dialysis. However, she testified that she is not the person who initiates dialysis or monitors a patient while on dialysis. Additionally, Nurse Hall acknowledged on cross-examination that her patients are not transported outside the jail and that, while the jail uses stretchers and wheelchairs, it has no vehicles. Therefore, she is not involved with transport vehicles.

Nurse Hall testified that Mr. Prieto was a fall risk. His chart from University Plaza stated that for transfer, he has "total dependence" and needed three people to

7

help him do things like getting into the shower or into bed. The chart also reflected that Mr. Prieto had a severe medical condition that placed him at a high risk of falling. Other documents showed that Mr. Prieto could not brace himself for a fall and had impaired sitting balance. Nurse Hall also testified that a document entitled "Side Rail Screen," that was apparently from University Plaza, indicated that Mr. Prieto needed to be in a stretcher that had side rails.

Nurse Hall opined that everyone involved in Mr. Prieto's care and treatment knew he was a fall risk, and therefore, every person who came into contact with him should have made sure he was safe and not going to fall. Nurse Hall also opined that "every licensed person should have known through their nursing clinical judgment, should have stopped and questioned the fact that this gentleman was not in a stretcher when he was released from that [TRC] facility." Nurse Hall further testified that "[s]omeone should have questioned the fact that this gentleman freshly off dialysis, four hours of rigorous dialysis was transferred from that dialysis chair to a wheelchair." When asked if there was anything done to protect Mr. Prieto "as it relates to strapping him into the wheelchair itself," Nurse Hall replied that "there should have been some type of safety harness. When placing him into the van, there should have been some secure mechanism to keep him from falling. However, I'm not sure if that was actually done. . . ." In response to questioning, Nurse Hall testified that the nursing care Mr. Prieto received from TRC "fell below the

8

acceptable standard of nursing care towards securing and harnessing Mr. Prieto onto a stretcher for return transport." Nurse Hall further testified that a licensed professional should have "made sure that he was safely placed into a mechanism that was going to keep him safe in transport," or, at a minimum, he should have been safely strapped in place in his wheelchair.

On cross-examination, Nurse Hall admitted this case was not a fall case, and that the "problem occurred in the transport van." Nurse Hall also acknowledged that while living in University Plaza, although Mr. Prieto had to be transferred from the bed to the commode, or from the commode to the wheelchair, he moved around the facility—for example, to go to his meals or get from point A to point B—in a wheelchair. She also testified that a patient can be secured to a wheelchair and the wheelchair in turn can be secured to the floor of a transport vehicle. She agreed that it was the job of the transportation van's driver to secure Mr. Prieto's wheelchair to the floor. Nurse Hall acknowledged that she did not know whether Mr. Prieto was strapped into his wheelchair while he was in the TRC facility.

At the conclusion of the second day of trial, Prieto rested. TRC moved *ore tenus* for judgment in its favor under Rule 50, arguing that Prieto had not presented testimony "that would suggest that had Mr. Prieto been in a stretcher, any different result would have occurred." TRC argued that "we don't even have the connection between the standard of care violation that's alleged and medical causation." Prieto

9

responded that "not sending [Mr. Prieto] out in the stretcher is the negligence that directly led to where he was." The district court judge asked Prieto's counsel if there was "evidence that had the plaintiff been transported on a stretcher that the result would have been different." Prieto's counsel responded that Nurse Hall had "provided an opinion that the nursing care by DaVita, by the defendant fell below the . . .standard of care, and she also offered that had that not happened that would have . . . cured the issue. There wouldn't have been . . . harm." The district court deferred ruling on the motion until the next day so that Nurse Hall's testimony could be transcribed. The district court also noted that while Nurse Hall had opined in her affidavit in opposition to summary judgement "that the result would have been different had Mr. Prieto been sent back on a stretcher," the affidavit had "no bearing on what Ms. Hall's testimony was here before the jury," and that the determination on a Rule 50 motion is based on the evidence presented in court.

The following day, TRC argued that the transcript of Nurse Hall's testimony "is wholly bereft of any causation opinion" and that Nurse Hall offered no opinion on causation. As a result, TRC asserted that Prieto had not made a prima facie medical malpractice case, which, under *Gooding v. University Hospital Building, Inc.*, 445 So. 2d 1015 (Fla. 1984), requires that a plaintiff establish a breach of the standard of care and that "said breach proximately caused the damages claimed."

In response, Prieto argued that, under *Ruiz v. Tenet Hialeah Healthsystem, Inc.*, 260 So. 3d 977 (Fla. 2018), "if . . . medical negligence through a chain of events reasonably leads to the harm, that is a question for the jury to decide," and pointed to Nurse Hall's testimony that licensed professionals should have questioned why Mr. Prieto was not leaving his treatment on a stretcher and that TRC "should have taken more care to make sure that he left in the safest mechanism possible."

The district court stated that "[y]ou've established the breach of the duty" and that "[y]ou've got enough there to get [breach of duty] to the jury.  What we're talking about is causation."  Prieto responded that "the medical negligence—there's causation in the medical negligence and that causation proximately led to."  TRC explained that it was not arguing that there was an intervening cause of negligence, but rather, that there was no testimony on the element of causation, and that *Ruiz* did not overrule *Gooding* or state that the element of causation "is not existent anymore." The district court again asked Prieto's counsel if there was "evidence to support the fact that the outcome would have been different had he been transported on a stretcher."  Prieto responded that she had presented "plenty of evidence" that it was foreseeable that Mr. Prieto would be "harmed in an accident during medical transport" if he was not on a stretcher.

The district court then ruled orally that "*Ruiz* did not overrule *Gooding*" and that, based upon its reading of *Gooding*, Prieto had "failed to introduce evidence

11

which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of [TRC] was a substantial factor in causing Mr. Prieto's injuries." The district court explained that "[a] mere possibility of such causation is not enough" and that "[t]his matter, as in *Gooding*, remains one of pure speculation or conjecture." The district court thus granted TRC's Rule 50 motion.

On August 19, 2019, the district court entered a written order, finding as follows:

> For the reasons stated on the record during trial, the Court finds that Defendant is entitled to judgment as a matter of law because Plaintiff has failed to introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the Defendant's alleged negligence was a substantial factor in causing Rodolfo Prieto's injuries. See Gooding v. Univ. Hosp. Bldg., Inc., 445 So. 2d 1015 (Fla. 1984).

That same day, the district court entered final judgment in favor of TRC, and this appeal ensued.

## II.    STANDARD OF REVIEW

We review *de novo* a district court's order granting a party's motion for judgment as a matter of law and apply the same legal standard as the district court. *McGinnis v. Am. Home Mortg. Servicing, Inc.*, 817 F.3d 1241, 1254 (11th Cir. 2016); *London v. Fieldale Farms Corp.*, 410 F.3d 1295, 1300 (11th Cir. 2005).

## III.  ANALYSIS

On appeal, Prieto argues that the district court erred in granting TRC's Rule 50 motion for judgment as a matter of law.  Federal Rule of Civil Procedure 50(a) "allows the trial court to remove cases or issues from the jury's consideration 'when the facts are sufficiently clear that the law requires a particular result.'"  *Weisgram v. Marley Co.*, 528 U.S. 440, 448 (2000) (quoting 9A C. Wright & A. Miller, Federal Practice and Procedure § 2521, at 240 (2d ed.1995)); *see also*, Fed. R. Civ. P. 50(a).

Relevant to this appeal, "in order to survive a defendant's motion for judgment as a matter of law, offered at the conclusion of the plaintiff's case, the plaintiff must present evidence that would permit a reasonable jury to find in the plaintiff's favor on each and every element of the claim."  *Bogle v. Orange Cnty. Bd. of Cnty. Comm'rs*, 162 F.3d 653, 659 (11th Cir. 1998); *see also Collado v. United Parcel Serv., Co.*, 419 F.3d 1143, 1149 (11th Cir. 2005) ("Judgment as a matter of law for the defendant is due when there is insufficient evidence to prove an element of the claim.").

Under Florida law, "[t]he elements of a medical malpractice claim are: '(1) a duty by the physician, (2) a breach of that duty, and (3) causation.'"  *Cantore v. W. Boca Med. Ctr., Inc.*, 254 So. 3d 256, 260 (Fla. 2018) (quoting *Saunders v. Dickens*, 151 So. 3d 434, 441 (Fla. 2014)); *see also Jackson Cty. Hosp. Corp. v. Aldrich*, 835 So. 2d 318, 327–28 (Fla. Dist. Ct. App. 2002) ("To prevail in a medical malpractice

13

case, a plaintiff must establish the standard of care owed by the defendant, the defendant's breach of the standard of care, and that such breach proximately caused the alleged damages."). "As to the element of causation, 'Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injury.'" *Cantore*, 254 So. 3d at 260 (quoting *Gooding*, 445 So. 2d at 1018). A plaintiff does not "sustain this burden of proof by relying on pure speculation." *Cox v. St. Josephs Hosp.* 71 So. 3d 795, 799 (Fla. 2011); *see also Hessen for Use & Benefit of Allstate Ins. Co. v. Jaguar Cars, Inc.*, 915 F.2d 641, 647 (11th Cir. 1990) ("Florida has adopted a preponderance standard for causation in . . . negligence . . . actions; a mere possibility of causation is not enough."); *McCain v. Fla. Power Corp.*, 593 So. 2d 500, 504 (Fla. 1992) (stating that when "reasonable persons could differ as to whether the facts establish proximate causation[,] . . . the resolution of the issue must be left to the fact-finder," but that "[t]he judge is free to take this matter from the fact-finder" when the facts are "unequivocal").

On appeal, Prieto argues that the district court erred in relying on *Gooding* in entering judgment as a matter of law based on Prieto's failure to introduce evidence that would have afforded the jury a "reasonable basis for the conclusion that it is more likely than not" that TRC's failure to send Mr. Prieto home on a stretcher was a substantial factor in causing his injuries. Specifically, Prieto argues that the district

14

court should have instead relied upon *Ruiz*, which she asserts created an "exception" to *Gooding* by providing that liability attaches to initial negligent actors who set in motion a natural and continuous sequence of events that "bring about" the injuries at issue. Prieto thus claims that, under *Ruiz*, the issue of proximate cause should have gone to the jury because the testimony of Dr. Ali, Nurse Alfonso, and technician Ventura Valdez concerning TRC's negligence in failing to send Mr. Prieto out of its facility on a stretcher identified the "catalyst" of what led to Mr. Prieto's injuries. Prieto's argument, in essence, is that evidence of breach of the duty of care alone is sufficient to establish causation under Florida law.

Prieto's argument lacks merit. As explained below, we conclude that the district court properly applied *Gooding* and that *Ruiz* created no exception to a plaintiff's obligation to introduce legally sufficient evidence of proximate causation where the defendant's negligent act or omission is not the primary cause of the injury.

In *Gooding*, the Florida Supreme Court set forth Florida's standard on proximate cause in medical malpractice cases. 445 So. 2d at 1020–21. In that case, the plaintiff brought a medical malpractice claim against the defendant hospital, alleging that the hospital's emergency room staff was negligent in not taking an adequate history and treating the decedent's abdominal aneurysm before he bled out and went into cardiac arrest. *Id.* at 1017. At trial, the plaintiff presented expert

15

testimony that the "emergency room staff violated accepted medical standards." *Id.* The plaintiff's expert, however, "failed to testify that immediate diagnosis and surgery more likely than not would have enabled [the decedent] to survive." *Id.* The trial court denied the defendant's motion for directed verdict on causation and instructed the jury that it could find for the decedent "if the hospital destroyed [the decedent's] chance to survive." *Id.* The jury found the defendant liable, and the defendant hospital appealed. *Id.* The Florida district court of appeal reversed, holding that the trial court should have directed a verdict in favor of the defendant because the plaintiff "could not meet the more likely than not test for causation." *Id.* at 1017–18.

On review, the Florida Supreme Court affirmed the decision of the district court of appeal and held that in a medical malpractice case, "[t]he plaintiff must show that the injury more likely than not resulted from the defendant's negligence in order to establish a jury question on proximate cause. In other words, the plaintiff must show that what was done or failed to be done probably would have affected the outcome." *Id.* at 1020. The Florida Supreme Court found that the plaintiff's evidence established that the defendant breached the applicable standard of care when its emergency room staff failed to treat the decedent. *Id.* at 1018. Applying the proximate cause standard to the facts of the case, however, the Florida Supreme Court rejected the plaintiff's contention that it had presented sufficient evidence "for

16

a jury to find the hospital's negligence more likely than not constituted a substantial factor in [the decedent's] death." *Id.* at 1018. Instead, the Florida Supreme Court found that the expert's testimony "established a no better than even chance for [the decedent] to survive" even if the decedent had been immediately diagnosed and treated. *Id.* As such, "the hospital was entitled to a directed verdict because the plaintiff failed to prove causation." *Id.*

In reaching its conclusion, the Florida Supreme Court set forth the standard for proving proximate cause in negligence actions in Florida:

> In negligence actions Florida courts follow the more likely than not standard of causation and require proof that the negligence probably caused the plaintiff's injury. Prosser explored this standard of proof as follows:
>
>> "On the issue of the fact of causation, as on other issues essential to his cause of action for negligence, the plaintiff, in general, has the burden of proof. He must introduce evidence which affords a reasonable basis for the conclusion that it is more likely than not that the conduct of the defendant was a substantial factor in bringing about the result. A mere possibility of such causation is not enough; and when the matter remains one of pure speculation or conjecture, or the probabilities are at best evenly balanced, it becomes the duty of the court to direct a verdict for the defendant."

*Id.* at 1018 (citations omitted) (quoting Prosser, *Law of Torts* § 41 (4th ed.1971)).

Here, the district court did not err in applying *Gooding* when granting TRC judgment as a matter of law. As in *Gooding*, Prieto did not present evidence that

17

TRC's negligence more likely than not was a substantial factor in causing Mr. Prieto's injuries. None of the witnesses' testimony upon which Prieto relies addressed the issue of causation. Specifically, Prieto relies on the testimony of Dr. Ali, Nurse Alfonso, and technician Ventura Valdez[5] as identifying TRC's negligence in failing to send Mr. Prieto home in a stretcher. But while Dr. Ali's and Nurse Alfonso's testimony could support a fact-finder's conclusion that TRC breached its duty of care—a contention TRC does not dispute on appeal—neither witness offered any testimony that Mr. Prieto's injuries more likely than not resulted from TRC's failure to send him home on a stretcher. Indeed, when Dr. Ali was asked whether Mr. Prieto would have suffered "any injury" if he had been on a stretcher which was bolted to the van's floor, Dr. Ali did not express an opinion.

Furthermore, although Prieto on appeal does not address or discuss the testimony of her expert, Nurse Hall, a review of Nurse Hall's testimony shows that she did not testify that Mr. Prieto's injuries more likely than not resulted from TRC's failure to have Mr. Prieto leave in a stretcher. Instead, Nurse Hall opined only as to

---

[5] In her initial brief, Prieto states that she is relying on the trial testimony of Dr. Ali, Nurse Alfonso, and technician Ventura Valdez. Prieto, however, does not provide this Court with any citations to the specific trial testimony upon which she relies. Indeed, even though Prieto states that she relies on the testimony of technician Ventura Valdez, no part of technician Ventura Valdez's testimony is even referenced in Prieto's statement of facts. Where an appellant's argument does not contain citations to the parts of the record upon which she relies, this Court has found the issue abandoned. *See Singh v. U.S. Att'y Gen.*, 561 F.3d 1275, 1278–79 (11th Cir. 2009). On this basis alone, we could find Prieto's argument as to the sufficiency of the evidence abandoned. However, in the interest of completeness and because TRC's brief relies on the testimony of Nurse Hall, we have considered all the trial testimony presented above.

TRC's breach of the acceptable standard of nursing care because of its failure to place Mr. Prieto on a stretcher. Evidence of breach of duty of care is not enough to succeed on a claim of medical malpractice, *see Gooding*, 445 So. 2d at 1018–19; *Hollywood Med. Ctr., Inc. v. Alfred*, 82 So. 3d 122, 125–26 (Fla. Dist. Ct. App. 2012) (holding that the defendant was entitled to directed verdict on claim for medical malpractice where the plaintiff established that emergency room nurses breached the nursing standard of care but "no one testified that the nurses' failure to act affected [the decedent's] outcome"), and where there is insufficient evidence to prove an essential element of a claim—here, proximate cause—the defendant is entitled to judgment as a matter of law under Rule 50(a), *see Bogle*, 162 F.3d at 659.

Prieto's argument that *Ruiz* compels a different result also fails. In *Ruiz*, the Florida Supreme Court quashed the Third District Court of Appeal's decision in *Ruiz v. Tenet Hialeah Healthsystem, Inc.*, 224 So. 3d 828 (Fla. Dist. Ct. App. 2017), because the intermediate appellate court applied the incorrect proximate causation standard. 260 So. 3d at 977 In *Ruiz*, the plaintiff, Ruiz, filed a medical malpractice action against Dr. Lorenzo. 260 So. 3d at 980. When Ruiz's wife, Espinosa, was scheduled for surgery, Dr. Lorenzo, who was not assigned to Espinosa, performed the pre-anesthesia evaluation. *Id.* at 979–80. Dr. Lorenzo reviewed Espinosa' EKG report, which flagged the test result as abnormal. *Id.* at 979. Dr. Lorenzo failed to review all of Espinosa's lab results, which also showed abnormal results. *See id.* at

19

980.  After Dr. Lorenzo saw her for three to five minutes, Espinosa's assigned anesthesiologist took over and started the pre-anesthesia evaluation over.  Dr. Lorenzo did not inform Espinosa's surgeons about the abnormal EKG or lab results. *Id.*  During the surgery, Espinosa lost a large amount of blood and passed away after suffering from cardiac arrest.  *See id.* at 980, 983.

Ruiz filed suit against the doctors involved in Espinosa's treatment, including Dr. Lorenzo.  *Id.* at 980.  As to Dr. Lorenzo, Ruiz alleged that he breached the standard of care by not fully reviewing Espinosa's chart, not ordering a second EKG, and not telling the surgeons about the abnormal lab results.  *Id.* at 981.  Had these things been done, Ruiz alleged that the surgery would have been cancelled because Espinosa's underlying condition of multiple myeloma would have been discovered. *Id.* The intermediate appellate court affirmed the trial court's granting of a directed verdict in favor of Dr. Lorenzo, "concluding that no competent, substantial evidence in the record would allow a reasonable factfinder to conclude Dr. Lorenzo was the 'primary cause' of Espinosa's death." *Id.* (quoting *Ruiz*, 224 So. 3d at 830).

On review, the Florida Supreme Court quashed the decision because it was "inconsistent with [the Florida Supreme Court's] precedent regarding the proximate causation standard," as Florida "law does not require an act to be the exclusive or even the primary cause of an injury in order for that act to be considered the proximate cause of the injury: rather, it need only be a substantial cause of the

injury." *Id.* at 982–83. Relying on its decision in *Sardell v. Malanio*, 202 So. 2d 746 (Fla. 1967), the Florida Supreme Court explained that an initial negligent actor who is not the primary cause of the injury to the plaintiff is not shielded from liability where the act that injures the plaintiff "was merely a direct, natural and continuous sequel to the initial act." *Ruiz*, 260 So. 3d at 982 (quoting *Sardell*, 202 So. 2d at 747). Thus, while "Dr. Lorenzo's conduct was not the primary cause of Espinosa's death, . . . he may nonetheless be liable for his part in it if his failure to read and report the abnormal test results substantially contributed to causing it." *Id.* at 982– 83. For that reason, the Florida Supreme Court concluded that the intermediate appellate court erred when it concluded that Dr. Lorenzo was entitled to a directed verdict based on the fact that he was not the primary cause of Espinosa's death. *Id.* at 983. The Florida Supreme Court explained that its precedent made "clear that Dr. Lorenzo cannot prevent Ruiz from establishing proximate cause merely by showing his actions or omissions were not the primary cause of Espinosa's death." *Id.* Citing to *Gooding*, the Florida Supreme Court explained that, "to foreclose liability on the grounds of causation, Dr. Lorenzo's acts or omissions must not have substantially contributed to Espinosa's death as part of a natural and continuous sequence of events which brought about that result." *Id.*

Based on the applicable Florida law at issue here, we conclude that the district court did not err in failing to apply *Ruiz* when ruling on TRC's motion for judgment

21

as a matter of law and Prieto is not entitled to relief on this point. First, TRC did not argue that it was entitled to judgment as a matter of law because it was not the "primary cause" of Mr. Prieto's injuries. Rather, TRC argued that that judgment as a matter of law was appropriate because there was no evidence at all to support the element of proximate cause. For that reason alone, *Ruiz* does not apply here.

Second, *Ruiz* does not, as Prieto suggests, allow proximate cause to be inferred from the breach of a duty of care alone where the defendant is an initial negligent actor whose act or omission is not the primary cause of the injury. Instead, *Ruiz* makes clear that even where a defendant's act or omission is not the primary cause of the injury, a plaintiff maintains her burden of proof to establish proximate causation. *See id.* (explaining that a defendant is entitled to a directed verdict when there is no "competent, substantial evidence in the record which would permit a reasonable factfinder to reach a conclusion" that the defendant's acts or omissions substantially contributed to the plaintiff's injuries); *see also Sardell*, 202 So. 2d at 747 ("It remains the burden of the petitioners, Sardell, to prove that the act of [the initial negligent actor] was the proximate cause of the injury.").

Third, *Ruiz* did not craft an "exception" to *Gooding* for initial negligent actors who set in motion a natural and continuous sequence of events that bring about the plaintiff's injuries. Indeed, *Ruiz* relied upon *Gooding* for the statement of law that

22

in order to show proximate cause, a defendant's conduct must have substantially contributed to the injury. *See Ruiz*, 260 So. 3d at 982–83.

## IV.   CONCLUSION

The law in Florida is clear that a plaintiff in a negligence action cannot sustain the burden of proof on causation by relying on pure speculation. *See Cox*, 71 So. 3d at 799. Because Prieto failed to present any evidence that could support a jury's finding that TRC's alleged negligence in failing to send Mr. Prieto home on a stretcher more likely than not caused his injuries—an essential element of Prieto's medical malpractice claim—we conclude that the district court did not err in entering judgment as a matter of law in TRC's favor and affirm.

**AFFIRMED.**